RICARDO ECHEVERRIA #166049
STEVEN SCHUETZE #143778
STEVEN MESSNER #259606
**SHERNOFF BIDART ECHEVERRIA LLP**
600 South Indian Hill Boulevard
Claremont, California 91711
Phone: (909) 621-4935
Facsimile: (909) 625-6915

Attorneys for Defendant and Counter-Complainant
WESTERN MILLING, LLC

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

PRAETORIAN INSURANCE COMPANY, an Illinois corporation,

Plaintiffs,

v.

WESTERN MILLING, LLC, a California limited liability company,

Defendants.

WESTERN MILLING, LLC, a California limited liability company,

Counter-Complainant,

v.

PRAETORIAN INSURANCE COMPANY, an Illinois corporation; and DOES 1-25,

Counter-Defendants.

Case No.:1:15–cv–00557-DAG-EPG
[Assigned to the Hon. Dale A. Drozd - Courtroom 5]

**WESTERN MILLING LLC'S RESPONSE IN OPPOSITION TO STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW OFFERED TO SUPPORT PRAETORIAN'S MOTION FOR SUMMARY JUDGMENT**

Date: August 15, 2017
Time: 9:30 a.m.
Courtroom: Dept. 5, 7th Floor

Action Filed: April 10, 2015
Trial Date: November 14, 2017

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

Pursuant to L.R. 56-1, counterclaimants WESTERN MILLING LLC, submits this Response to Counterdefendants Praetorian Insurance Company's Statement of Uncontroverted Facts and Conclusions of Law in support of their Motion for Summary Judgment as follows

| PRAETORIAN PURPORTED UNDISPUTED MATERIAL FACTS (SUPPORTING EVIDENCE) | WESTERN MILLING'S RESPONSE (SUPPORTING EVIDENCE) |
|---|---|
| 1. Western Milling manufactures and supplies feed for different kinds of livestock, including feed used by commercial dairies. Its principal office, including its mill where it manufactures its feed products, is located in Goshen, California.<br><br>Complaint at ¶ 10, attached as Exhibit A to John A. Chatowski's Declaration ("Chatowski Declaration"); Counterclaim at ¶ 1, attached as Exhibit B to Chatowski Declaration. | 1. Undisputed that Western Milling manufactures and supplies feed for different kinds of livestock, including feed used by commercial dairies.<br><br>Disputed to the extent that the evidence does not support that the principal office, including its mill, is located in Goshen, California. The Counterclaim, ¶1 states the principal office is located in Tulare County, California. |
| 2. C&K is a limited liability company that was formed in April 2008, but was inactive until November 2009.<br><br>La Bounty 30(b)(6) Depo at 15:20-16:1, 21:6-9, attached as Exhibit E to Chatowski Declaration. | 2. Undisputed |

| | |
|---|---|
| 3. Western Milling is the sole member of C&K, and Kevin Kruse of Western Milling is its sole manager.<br><br>La Bounty 30(b)(6) Depo at 37:20-23, 38:22-24, attached as Exhibit E to Chatowski Declaration. | 3. Undisputed that Western Milling is sole member of C&K.<br>Disputed. . Joe Mendes is the manager of C & K.<br><br>Avila Deposition 14:6-10, attached as Exhibit 5 to Schuetze Declaration<br><br>Disputed to the extent that the cited evidence does not support "Kevin Kruse of Western Milling."<br>*See* La Bounty 30(b)(6) Depo at 37:20-23, 38:22-24, attached as Exhibit E to Chatowski Declaration. |
| 4. All of the profits and losses of C&K are allocated, for book purposes, to Western Milling.<br><br>La Bounty 30(b)(6) Depo at 35:20-23, attached as Exhibit E to Chatowski Declaration. | 4. Undisputed that all of the profits and losses of the LLC, C & K, are allocated to the sole member Western Milling.<br><br>La Bounty 30(b)(6) Depo at 35:20-23, attached as Exhibit E to Chatowski Declaration. |
| 5. C&K does not own any property, cattle, or equipment.<br><br>Avila Depo at 55:1-14, attached as Exhibit F to Chatowski Declaration. | 5. Undisputed. |
| 6. No corporate officers of C&K provide any management services to the employees of C&K. | 6. Incomplete, and disputed as phrased.<br><br>While no corporate officer provides management services, Joe Mendes, Sr. |





SHERNOFF BIDART ECHEVERRIA LLP LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| La Bounty 30(b)(6) Depo at 38:18-21, attached as Exhibit E to Chatowski Declaration. | of C&K manages the C&K employees. C & K also pays the salaries of its employees for the care of the animals at Goshen West Ranch. La Bounty 30(b)(6) Depo at 38:2-17, attached as Exhibit E to Chatowski Declaration. |
| 7. Praetorian issued a Commercial Lines Policy to Western Milling, Policy No. H100-100106-04, effective November 17, 2013 to November 17, 2014 (the "Policy"). Excerpts from Praetorian Property Coverage Form, attached as Exhibit C to Chatowski Declaration; Complaint at ¶ 8, attached as Exhibit A to Chatowski Declaration; Counterclaim at ¶ 7, attached as Exhibit B to Chatowski Declaration. | 7. Undisputed. |
| 8. The Policy includes an exclusion, 2.J, which provides as follows: "This insurance does not apply to: . . . J. Damage to Property. "Property damage" to: (4) Personal property in the care, custody or control of the insured." | 8. Undisputed these provisions are in the Praetorian policy. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| The Praetorian policy defines "Occurrence" as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined as [p]hysical injury to tangible property, including all resulting loss of use of that property. The policy defines "your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [the insured]."<br><br>"Products-completed operations hazard" is defined by the Praetorian policy to include "all . . . 'property damage' occurring away from premises [the insured] own[s] or rent[s] and arising out of "your product" or "your work" except . . [p]roducts that are still in [the insured's] physical possession . . ."<br><br>Praetorian Property Coverage Form at PRA 009046-009047 and PRA 009057, attached as Exhibit C to Chatowski Declaration; Complaint at ¶ 9, attached as Exhibit A to Chatowski Declaration. | |
| 9. Praetorian issued Commercial | 9. Undisputed these provisions are in |




| | |
|---|---|
| Excess Policy to Western Milling, Policy No. BPU-100106-04, with the following relevant provisions:<br><br>"Subject to the other provisions of this policy, we will indemnify the Insured for the insured's "Ultimate Net Loss" if such loss results from an occurrence insured by all of the policies designated in the Declarations as "Underlying Insurance". However, the insurance afforded by this policy shall apply (a) only in excess of all "Underlying Insurance", and (b) only after all "Underlying Insurance" has been exhausted by payment of the limits of such insurance. If any "Underlying Insurance" does not pay a loss, for reasons other than exhaustion of an aggregate limit of insurance, then we shall not pay such loss.<br><br>The definitions, terms, conditions, limitation, exclusions, and warranties of the first "Underlying Insurance" policy, in effect at the inception date of this policy, apply to this coverage unless they are inconsistent with provisions of this policy, or relate to premium, subrogation, an obligation to investigate and defend, the amount or limits of insurance, payment of expenses, cancellation or any renewal | the Praetorian excess policy.<br><br>Disputed to the extent that the excess policy does not contain the referenced underline, bold emphasis of the term "of any insured." |

| | |
|---|---|
| agreement."<br><br>The excess policy also excludes coverage for the subject claim:<br><br>4. PROPERTY DAMAGE – CARE, CUSTODY, OR CONTROL – Property owned, rented or occupied by any insured; property loaned to any insured,; or Personal property in the care, custody or control ***of any insured***.<br>Excerpts from Praetorian Commerical Excess Form at pp. 2 of 9 and 5 and 9, attached as Exhibit D to Chatowski Declaration. | |
| 10. In November 2009, before the Policy incepted, Western Milling's insurance agent, Andreini & Company ("Andreini"), requested that C&K be added to the named insured schedule. Andreini stated that C&K was going to be managing a 40-acre cattle farm known as Goshen West Ranch ("GWR"), which it identified as a feed yard operation that has approximately 860 small heifers. Andreini also stated that "Western Milling leased this operation from Farm Credit last summer | 10. Disputed. The evidence cited does not support this fact as stated.<br><br>Exhibit 110 (also , attached to La Bounty 30(b)(6) Depo. and referenced at 36:17, in an e-mail from MaryBeth Downs of Andreini on November 25, 2009, on . page 2 states "Now, C &K Ag Holdings will be actively managing the ranch at location #13 - 31231 Road 60. The employees will be receiving their paychecks from C &K Ag Holdings not Western Milling. This |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS




| | |
|---|---|
| with the intent of holding it as a short term investment. No Buyer has been identified yet so WM continues to manage the operations."<br><br>La Bounty 30(b)(6) Depo at 36:17-37:18, attached as Exhibit E to Chatowski Declaration. | location is a feed yard operation that has approx. 860 small hefers." The location identified is Goshen West Ranch.<br><br>La Bounty 30(b)(6) Depo at 36:17-37:18, attached as Exhibit E to Chatowski Declaration;<br><br>McCurdy, 30(b)(6) Safehold Special Risk Depo. Deposition, at 7:10-9:25; 15:6-17; 22:16-25:25, attached as Exhibit 3 to Schuetze Declaration;<br><br>Plaintiff's Exhibit 110 , attached as Exhibit 4 to Schuetze Declaration. |
| 11. "Goshen West Ranch" is also dba of Western Milling.<br><br>Avila Depo at 56:13-19, attached as Exhibit F to Chatowski Declaration. | 11. Undisputed. |
| 12. The Policy identified the business and location of the premises as "Feed Manufacturing" and "Location of All Premises You Own, Rent Or Occupy: See Schedule of Locations for location listing." GWR is located at 31231 Road 60, Visalia, California, location number 13 on the Schedule of Locations in the Policy. | 12. Undisputed. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| Counterclaim at ¶ 9, attached as Exhibit B to Chatowski Declaration. | |
| 13. GWR was previously owned by a bank. Western Milling leased the property from the bank in May 2009, and then bought it in November 2009.<br><br>La Bounty 30(b)(6) Depo at 23:23-25:13 and 27:21-28:12, attached as Exhibit E to Chatowski Declaration. | 13. Undisputed. |
| 14. All of the buildings, structures, equipment, and the computer at GWR are owned by Western Milling.<br><br>Avila Depo at 69:20-24, 75:9-14, attached as Exhibit F to Chatowski Declaration.; La Bounty 30(b)(6) Depo at 39:9-13, attached as Exhibit E to Chatowski Declaration. | 14. Undisputed. |
| 15. There are no written contracts between Western Milling and C&K; only an oral agreement that C&K would manage the property and pay the C&K employees at GWR to take care of the cattle.<br><br>La Bounty 30(b)(6) Depo at 58:22-59:11, attached as Exhibit E to Chatowski Declaration. | 15. Disputed, since the cited testimony is inaccurately phrased. The quoted testimony states that there was an oral agreement between Western Milling and C&K that C&K would be managing *the employees* and paying the employees at Goshen West Ranch *to care for the cattle*.<br>La Bounty 30(b)(6) Depo at 58:22-59:11, attached as Exhibit E to Chatowski Declaration.<br><br>Undisputed there were no written |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| | contracts. |
| 16. Western Milling dba Goshen West Ranch only makes payments to C&K to cover the wages of the employees that work at GWR.<br><br>Avila Depo at 56:22-57:12, attached as Exhibit F to Chatowski Declaration. | 16. Incomplete, and therefore disputed as phrased. The cited testimony states Western Milling makes payments to C&K to oversee the cattle and manage Goshen West Ranch including payment of wages for employees, as well as payments for the workman's compensation.<br><br>Avila Depo at 56:22-57:12, attached as Exhibit F to Chatowski Declaration. |
| 17. Joe Mendes Sr. ("Joe") started working as the manager of GWR in June or July 2009, and after a few months he started reporting to Manny Avila ("Avila") at Western Milling.<br><br>Joe Mendes Depo at 16:16-18 and 17:13-19, attached as Exhibit G to Chatowski Declaration.; La Bounty 30(b)(6) Depo at 55:8-24, attached as Exhibit E to Chatowski Declaration. | 17. Disputed as phrased. Joe Mendes Sr. was first hired as an independent contractor at GWR in June or July 2009, until he became an employee of C & K in 2013.<br><br>Joe Mendes Depo at 16:16-23, attached as Exhibit G to Chatowski Declaration; La Bounty 30(b)(6) Depo at 55:8-57:21, attached as Exhibit E to Chatowski Declaration.<br><br>Avila Deposition 85:12-23, attached as Exhibit 5 to Schuetze Declaration. |
| 18. In 2009 Joe hired his son, Joey | 18. Undisputed, but incomplete as |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| Mendes ("Joey"), to work at GWR.<br><br>Joey Mendes Depo at 16:24-17:1, attached as Exhibit H to Chatowski Declaration. | phrased. Joey was hired as an employee of C & K.<br><br>La Bounty 30(b)(6) Depo at 55:8-57:21, attached as Exhibit E to Chatowski Declaration. |
| 19. Joe started working at GWR as an independent contractor paid by Western Milling dba Goshen West Ranch, and later as an independent contractor for C&K.<br><br>Joe Mendes Depo at 16:24-17:3, attached as Exhibit G to Chatowski Declaration.; La Bounty 30(b)(6) Depo at 56:25-57:12, attached as Exhibit E to Chatowski Declaration. | 19. Undisputed, but incomplete as phrased. Joe Mendes Sr. was first hired as an independent contractor at GWR in June or July 2009, until he became an employee of C & K in 2013.<br><br>Joe Mendes Depo at 16:16-23, attached as Exhibit G to Chatowski Declaration La Bounty 30(b)(6) Depo at 55:8-57:21, attached as Exhibit E to Chatowski Declaration.<br><br>Avila Deposition 85:12-23 |
| 20. After about three years Joe became a C&K employee and started receiving paychecks from C&K.<br><br>Joe Mendes Depo at 14:14-15:19, 15:23-16:15, attached as Exhibit G to Chatowski Declaration. | 20. Disputed. In 2013, Joe Mendes, prior to the cows being poisoned, started receiving paychecks from C&K.<br><br>Joe Mendes Depo at 14:14-15:19, 15:23-16:15, attached as Exhibit G to Chatowski Declaration.<br><br>Avila Deposition 85:12-23, attached as Exhibit 5 to Schuetze Declaration. |

| | |
|---|---|
| 21. Joe lives at GWR in a mobile home owned by Western Milling, and he does not pay for electricity or water at his home.<br><br>Joe Mendes Depo at 102:21-103:6 and 104:14-105:1, attached as Exhibit G to Chatowski Declaration.; Avila Depo at 70:10-23, attached as Exhibit F to Chatowski Declaration. | 21. Undisputed. |
| 22. Joey understood that Avila was going to be supervising his father Joe.<br><br>Joey Mendes Depo at 22:8-11, attached as Exhibit H to Chatowski Declaration. | 22. Disputed as phrased. Joe Mendes is the manager of C & K. Joe Mendes reported to Manny Avila of Western Milling, who was not his "supervisor"<br><br>Avila Deposition 14:6-10, attached as Exhibit 5 to Schuetze Declaration.<br><br>Joe Mendes Depo. at 17:13-25 attached as Exhibit G to Chatowski Declaration; |
| 23. Joey is paid by direct deposit by C&K.<br><br>Joey Mendes Depo at 23:1-24:3, attached as Exhibit H to Chatowski Declaration. | 23. Undisputed. |
| 24. Joey also is reimbursed separately by Western Milling for his mileage when he makes supply runs when they need materials for the ranch including | 24. Undisputed that Joey gets reimbursed for his mileage for supply runs. |



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| vaccinations, medicines, and radio frequency identification ("RFID") tags for the cattle, or when Joey needs to go to Western Milling's offices to meet with Avila.<br><br>Joey Mendes Depo at 51:12-52:14, attached as Exhibit H to Chatowski Declaration.; Avila Depo at 103:2-8, attached as Exhibit F to Chatowski Declaration. | Disputed to the extent this fact seeks to establish that Joey gets reimbursed for his mileage from his home to the ranch, or for any other purpose.<br><br>Joey Mendes Depo at 51:12-52:14, attached as Exhibit H to Chatowski Declaration.; Avila Depo at 103:2-8, attached as Exhibit F to Chatowski Declaration. |
| 25. Avila has been exclusively an employee of Western Milling since 2009.<br><br>Avila Depo at 23:13-15, attached as Exhibit F to Chatowski Declaration. | 25. Undisputed. |
| 26. Avila has been paid by Western Milling to be the manager of GWR, to oversee the ranch, to make sure that it is profitable, and to be the liaison with the C&K employees that manage the cattle.<br><br>Avila Depo at 30:20-31:4, 59:4-8, 60:5-23, attached as Exhibit F to Chatowski Declaration.; La Bounty 30(b)(6) Depo at 83:9-17, attached as Exhibit E to Chatowski Declaration. | 26. Undisputed that Avila manages of the property and is a liaison to the C&K employees who manage the cattle.<br><br>Disputed to the extent this fact infers that Avila manages the animals. C & K employees manage the animals.<br><br>La Bounty 30(b)(6) Depo at 83:9-17, attached as Exhibit E to Chatowski Declaration. |
| 27 Avila has discussed Goshen Western Ranch profit and loss statements with Joey to make sure that the expenses that | 28. Undisputed that expenses incurred were verified by Joe or Joey. |

| | |
|---|---|
| are attributable to GWR are accurate.<br><br>Avila Depo at 211:17-212:13, attached as Exhibit F to Chatowski Declaration. | Disputed that Avila has ever reviewed profit and loss statements from C & K Holdings.<br><br>Avila Depo at 211:17-212:25, attached as Exhibit F to Chatowski Declaration.<br><br>Avila Deposition 212:25-213:6, attached as Exhibit 5 to Schuetze Declaration. |
| 28. Avila visits the ranch to make sure C&K is looking after everything, and if he sees something that is not being done right, he will tell Joe, because part of Avila's job is the overall management of GWR.<br><br>Avila Depo at 118:12-119:10, attached as Exhibit F to Chatowski Declaration. | 28. Undisputed only to the extent that Avila would raise any issue that needed to be addressed with Joe<br><br>Avila Depo at 118:12-119:10, attached as Exhibit F to Chatowski Declaration. |
| 29. Avila also sometimes goes to the ranch and tells the workers to increase the amount of feed for the cattle if he thinks they need more.<br><br>Avila Depo at 124:21-25, attached as Exhibit F to Chatowski Declaration; Avila 30(b)(6) Depo at 73:12-17, attached as Exhibit I to Chatowski Declaration. | 29. Undisputed. |
| 30. Avila procures and markets all of | 30. Undisputed that Avila only procures |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| Western Milling's cattle, as well as the cattle of Kevin Kruse, which have been kept at GWR.<br><br>Avila Depo at 41:15-23, 44:7-13, 60:5-10, attached as Exhibit F to Chatowski Declaration. | and markets Western Milling's owned cattle, and the cattle owned by Kevin Kruse.<br><br>Disputed that Avila manages cattle owned by anyone other than Western Milling and Kruse.<br><br>Avila Depo at 44:7-13, 60:5-10, attached as Exhibit F to Chatowski Declaration. |
| 31. Avila is in charge of finding any replacement equipment for GWR; the workers at the ranch are not involved.<br><br>Avila Depo at 78:2-25, attached as Exhibit F to Chatowski Declaration. | 31. Undisputed. |
| 32. On occasion Avila also has helped process cattle into and out of GWR.<br><br>Avila Depo at 110:11-23, attached as Exhibit F to Chatowski Declaration. | 32. Undisputed. |
| 33. Avila procures third party customers, negotiates oral contracts with them to have their cattle kept at GWR, and is in charge of invoicing those customers.<br><br>Avila Depo at 60:5-61:2, 67:1-10, attached as Exhibit F to Chatowski Declaration. | 33. Undisputed |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| 34. Western Milling has the business relationship with these customers, not C&K. Avila Depo at 66:8-25, attached as Exhibit F to Chatowski Declaration. | 34. Undisputed. |
| 35. The payments from the third-party customers are made to Western Milling dba Goshen West Ranch. Western Milling sends invoices to the third party cattle owners for taking care of the cattle at GWR, and the cattle owners pay those invoices to Western Milling. Avila Depo at 67:24-68:9, attached as Exhibit F to Chatowski Declaration. | 35. Disputed. The testimony states the payments are being made to Western Milling. Avila Depo at 67:24-68:9, attached as Exhibit F to Chatowski Declaration. |
| 36. Western Milling does not have any written contracts with these customers. Avila Depo at 67:1-5, attached as Exhibit F to Chatowski Declaration. | 36. Undisputed. |
| 37. The oral contracts between Western Milling and the third party cattle owners were that Western Milling would take possession of the cattle, maintain them, feed them, make sure they would be safe on the property and not get sick. Avila 30(b)(6) Depo at 55:11-56:10, 57:13-25, attached as Exhibit I to Chatowski Declaration. | 37. Disputed. The cited testimony does not state "make sure they would be safe on the property." Avila 30(b)(6) Depo at 55:11-56:10, 57:13-25, attached as Exhibit I to Chatowski Declaration. Disputed. C & K employees, under the direction of Joe Mendes, feed and provide medication and vaccinations to |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS



| | |
|---|---|
| | the cattle, and process the cattle in and out of Goshen West Ranch.<br><br>Joe Mendes Depo at 30:20-32:24, attached as Exhibit G to Chatowski Declaration.<br><br>Joe Mendes Depo at 38:14-42:9, attached as Exhibit 25 to Schuetze Declaration. |
| 38. When Joe wants to hire someone to work at GWR he makes the recommendation to Avila.<br><br>Joe Mendes Depo at 29:6-30:8, attached as Exhibit G to Chatowski Declaration. | 38. Disputed. Avila left it up to Joe regarding who to hire for C & K.<br><br>Avila Deposition at 94:15-97:21, attached as Exhibit 5 to Schuetze Declaration. |
| 39. Joe does not have the right to make these hiring decisions on his own.<br><br>Avila Depo at 72:5-13, attached as Exhibit F to Chatowski Declaration. | 39. Disputed. Avilia left it up to Joe regarding who to hire for C & K.<br><br>Avila Deposition at 94:15-97:21, attached as Exhibit 5 to Schuetze Declaration. |
| 40. Since 2009, Bob Berczynski ("Berczynski") of Western Milling has acted as the nutritionist for GWR.<br><br>Joey Mendes Depo at 33:2-13, attached as Exhibit H to Chatowski Declaration; Avila Depo at 16:23-17:4, attached as Exhibit F to Chatowski Declaration. | 40. Undisputed that Bercynski is nutritionist for Western Milling. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| 41. Berczynski provides the mixing instructions to the workers at the ranch that include the specific quantities of different products that should be put into the feed rations for the cattle.<br><br>Joe Mendes Depo at 38:6-13, 46:13-47:1, and 80:6-17, attached as Exhibit G to Chatowski Declaration. | 41. Undisputed. |
| 42. The workers at GWR process cattle into the ranch, treat them with medication and feed them, and then ship cattle back to the owners. If someone is going to pick up cattle from the ranch Avila will send an email to let Joey know.<br><br>Joe Mendes Depo at 30:20-32:3 and 83:23-84:10, attached as Exhibit G to Chatowski Declaration. | 42. Disputed. Evidence does not support statement that Avila would send e-mail to let Joey know if someone going to pick up cattle.<br>"The workers at GWR" is misleading and inaccurate.<br><br>C & K employees, under the direction of Joe Mendes, feed and provide medication and vaccinations to the cattle, and processes the cattle in and out.<br><br>Joe Mendes Depo at 30:20-32:24, attached as Exhibit G to Chatowski Declaration.<br><br>Joe Mendes Depo at 38:14-42:9, attached as Exhibit 25 to Schuetze Declaration. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| 43. The cattle at GWR are fed feed rations. Feed rations include a number of ingredients, including silage, hay, grain, and minerals. The grain and minerals come from Western Milling.<br><br>Joe Mendes Depo at 34:1-4, 34:5-36:12, and 84:15-19, attached as Exhibit G to Chatowski Declaration. | 43. Undisputed. |
| 44. The workers at GWR will receive an email from Avila telling them when loads of hay or silage are being delivered to the ranch and how much is going to be delivered.<br><br>Joey Mendes Depo at 46:23-47:8, 75:23-76:1, attached as Exhibit H to Chatowski Declaration. | 44. Disputed as phrased. "The workers at GWR" is misleading and inaccurate.<br><br>Joey Mendes, an employee of C & K, testified that he would receive an e-mail from Avila.<br><br>Joey Mendes Depo at 46:23-47:8, 75:23-76:1, attached as Exhibit H to Chatowski Declaration. |
| 45. When there is excess silage at the ranch Avila is involved in selling it to customers of Western Milling.<br><br>Avila Depo at 62:4-8, attached as Exhibit F to Chatowski Declaration. | 45. Undisputed. |
| 46. C&K is not paid anything by Western Milling for storing the silage at GWR, which is solely owned by Western Milling.<br><br>Avila Depo at 68:17-19 and 69:3-6, | 46. Undisputed. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| attached as Exhibit F to Chatowski Declaration. | |
| 47. Returned feed, which comes from Western Milling, is also fed to the cattle at GWR. Returned feed is a mix of three or four different ingredients like mill run and wheat.<br><br>Joe Mendes Depo at 82:8-13 and 83:1-14, attached as Exhibit G to Chatowski Declaration. | 47. Undisputed. |
| 48. Returned feed can be "turndowns" from Western Milling customers that are denied, or batches that were wrongly mixed at Western Milling. Return feed is not sold directly to third party customers.<br><br>Joey Mendes Depo at 120:2-24, attached as Exhibit H to Chatowski Declaration | 48. Objection. Lacks foundation establishing that Joey Mendes, who was not an employee of Western Milling would know how or why fees are returned to Western Milling. |
| 49. Berczynski, the Western Milling nutritionist for GWR, sometimes visits GWR to check the cattle, their condition, and their care, because there are different rations for different cattle. Berczynski also checks the inventory of the feed to decide what the combination should be to make the feed rations. Berczynski then emails the mixing | 49. Undisputed. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| instructions from his Western Milling office to Joey at GWR, who inserts the information into a "Feed Watch" program on the computer at the ranch.<br><br>Joe Mendes Depo at 80:11-25 and 81:12-82:7, attached as Exhibit G to Chatowski Declaration; Joey Mendes Depo at 77:11-21, attached as Exhibit H to Chatowski Declaration. | |
| 50. The workers at GWR are not authorized to make any changes to the ration instructions. When the workers at GWR get returned feed to be mixed and fed to the cattle they are given instructions from Berczynski or someone else at Western Milling about how much to put into the feed ration.<br><br>Joey Mendes Depo at 78:2-12, attached as Exhibit H to Chatowski Declaration; Joe Mendes Depo at 83:15-84:2, attached as Exhibit G to Chatowski Declaration. | 50. Disputed as phrased. "The workers at GWR" is misleading and inaccurate.<br><br>Joey Mendes, an employee of C & K, and Joe Mendes, an employee of C & K received ration instructions from Berczynski.<br><br>Joey Mendes Depo at 78:2-12, attached as Exhibit H to Chatowski Declaration; Joe Mendes Depo at 83:15-84:2, attached as Exhibit G to Chatowski Declaration. |
| 51. Since 2009, neither Joe nor any of the other workers at the ranch have decided on their own how to mix the feed; they always follow either the instructions of the Western Milling nutritionist or the client. | 51. Disputed as phrased.<br><br>The evidence supports that neither Joe nor employees of C & K have decided on their own how to mix the feed.<br><br>Joe Mendes Depo at 49:19-24, |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| Joe Mendes Depo at 49:19-24, attached as Exhibit G to Chatowski Declaration; Joey Mendes Depo at 32:6-13, attached as Exhibit H to Chatowski Declaration | attached as Exhibit G to Chatowski Declaration; Joey Mendes Depo at 32:6-13, attached as Exhibit H to Chatowski Declaration |
| 52. The computer at GWR has a program called Team Viewer, which Avila can log in to from his office and make changes to feed rations.<br><br>Joe Mendes Depo at 116:4-22, attached as Exhibit G to Chatowski Declaration. | 52. Undisputed. |
| 53. Avila visits GWR, sometimes once a week, once every two weeks, or three days a week depending on the week. He sometimes walks around the ranch. Avila also picks up paperwork, including Joey's mileage forms and receipts from purchasing ranch supplies.<br><br>Joe Mendes Depo at 70:10-15 and 73:12-13, attached as Exhibit G to Chatowski Declaration; Joey Mendes Depo at 54:10-15, attached as Exhibit H to Chatowski Declaration. | 53. Undisputed that Avila's visits to the ranch vary from week to week.<br><br>Joe Mendes Depo at 70:10-15 and 73:12-13, attached as Exhibit G to Chatowski Declaration; |
| 54. A couple of times a year Avila also will go to GWR, pick up a sample bag of ration fresh out of the mixer, and take it back to the Western Milling lab for testing. | 54. Undisputed that Avila will request a sample bag of mixer.<br><br>Lacks foundation and therefore disputed as to whether the sample is taken to a Western Milling lab for testing. |

| | |
|---|---|
| Joey Mendes Depo at 148:22-151:2, attached as Exhibit H to Chatowski Declaration. | Joey Mendes Depo at 148:22-151:2, attached as Exhibit H to Chatowski Declaration. |
| 55. Avila also checks on the inventory of the silage at GWR, and if there is excess silage, either Avila or someone else from Western Milling will direct that it be sold to a specific customer. Joe has never sold silage to a third party on his own without asking the permission of Avila or someone else at Western Milling.<br><br>Joe Mendes Depo at 74:6-25, attached as Exhibit G to Chatowski Declaration. | 55. Undisputed. |
| 56. Typically when it comes to payroll for the workers at GWR, Joe and Joey work with human resources personnel at Western Milling, but sometimes Joey also would ask Avila for help. Joey scans the workers' time cards on the computer at the ranch and emails them to human resources at Western Milling. Avila delivers the paychecks to the workers.<br><br>Joe Mendes Depo at 101:2-6, attached as Exhibit G to Chatowski Declaration; Joey Mendes Depo at | 56. Undisputed, with a correction that Joe Mendes testified he would ask Avila for help. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| 56:7-23 and 82:10-19, attached as Exhibit H to Chatowski Declaration. | |
| 57. Safety meetings are held at GWR every three months. They are conducted by someone from human resources at Western Milling. He observes the ranch workers, and if he sees that they are not doing something right, he shows them or tells them how to do it.<br><br>Joe Mendes Depo at 125:13-22 and 127:1-17, attached as Exhibit G to Chatowski Declaration; Avila 30(b)(6) Depo at 74:22-25, attached as Exhibit I to Chatowski Declaration. | 57. Undisputed. |
| 58. Veterinarians paid by Western Milling go to the ranch and give instructions to the C&K employees for the vaccinations and inoculations of the cattle at GWR.<br><br>Avila 30(b)(6) Depo at 75:1-5, attached as Exhibit I to Chatowski Declaration. | 58. Overstated, and therefore disputed as phrased.<br><br>The cited testimony states that the veterinarian "would come out and give instructions *on occasion* to the C & K employees… "<br><br>Avila 30(b)(6) Depo at 75:1-5, attached as Exhibit I to Chatowski Declaration. |
| 59. The computer at GWR generates reports that are automatically sent to Joe, Joey and Avila, including a summary of inventory, usage, and dry | 59. Undisputed that the reports are sent to Avila for inventory.<br><br>Lacks foundation and unsupported by |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| matter intake. They are sent to Avila so he can keep track of what the workers at the ranch are using. Joey Mendes Depo at 72:25-73:22, attached as Exhibit H to Chatowski Declaration; Joe Mendes Depo at 132:24-133:18, attached as Exhibit G to Chatowski Declaration. | the evidence the purpose for which Avila uses the reports, and disputed that such reports are to "keep track of what the workers at the ranch are using." Joey Mendes Depo at 72:25-73:22, attached as Exhibit H to Chatowski Declaration; Joe Mendes Depo at 132:24-133:18, attached as Exhibit G to Chatowski Declaration. |
| 60. Avila also receives mixing error reports from GWR daily. These reports show if the feeder at GWR who is loading the ingredients into the mixing wagon is adding too much or too little of the different ingredients. Avila Depo at 120:12-121:5, attached as Exhibit F to Chatowski Declaration. | 60. Undisputed. |
| 61. If there is a significant error Avila will tell Joe because this will affect Western Milling's bottom line, and it might reflect that there is an employee performance problem. Avila Depo at 121:6-122:11, attached as Exhibit F to Chatowski Declaration. | 61. Undisputed. |




| | |
|---|---|
| 62. On August 5, 2014 cattle owned by Western Milling, Kevin Kruse, and eight third-party cattle owners whose cattle were being cared for at GWR were exposed to rations that included return feed that Western Milling believed that contained excess Rumensin.<br><br>Avila Depo at 199:22-200:1, attached as Exhibit F to Chatowski Declaration. | 62. Disputed. The evidence stated does not support most of the factual statements.<br><br>The evidence cited only states that the feed involved in the August incident was return feed that contained Rumensin.<br><br>Avila Depo at 199:22-200:1, attached as Exhibit F to Chatowski Declaration |
| 63. The feed was sent directly from the Western Milling mill to GWR.<br><br>Avila Depo at 200:10-201:10, attached as Exhibit F to Chatowski Declaration. | 63. Undisputed.. |
| .64. The return feed was manufactured by Western Milling for a customer, but the truck delivering the feed was overweight when it tried to leave the mill, and the driver was instructed to dump a certain amount of the feed to a return feed pile at the mill.<br><br>Avila Depo at 201:11-202:16, attached as Exhibit F to Chatowski Declaration | 64. Undisputed as to the sequence of events.<br><br>Avila Depo at 201:11-202:16, attached as Exhibit F to Chatowski Declaration |
| 65. After several months at the mill, a delivery of the returned feed that | 65. Undisputed that after a period of time the returned feed that contained the |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| contained elevated levels of Rumensin was delivered to GWR.<br><br>La Bounty 30(b)(6) Depo at 69:20-24, attached as Exhibit E to Chatowski Declaration. | elevated levels of Rumensin was delivered to GWR.<br><br>La Bounty 30(b)(6) Depo at 69:5-70:4, attached as Exhibit E to Chatowski Declaration. |
| 66. As a result of the exposure, approximately 861 animals owned by the third parties died. Additional animals owned by third parties survived, but potentially had limited growth and reproductive capability as a result of consuming contaminated feed.<br><br>Complaint at ¶ 11, attached as Exhibit A to Chatowski Declaration; Counterclaim / Cross-Complaint at ¶ 29, attached as Exhibit B to Chatowski Declaration. | 66. Undisputed that on August 5, 2014 that over 2,000 cattle were exposed to the feed with excessive amounts of Rumesin, and 861 animals owned by third parties died, and additional animals potentially had limited growth and reproductive capability as result of consuming the contaminated feed.<br><br>Complaint at ¶ 11, attached as Exhibit A to Chatowski Declaration; Counterclaim / Cross-Complaint at ¶ 29, attached as Exhibit B to Chatowski Declaration. |
| 67. Mark La Bounty, the Executive Vice President and General Counsel for Western Milling, learned about the Rumensin incident on the day it occurred, August 5, 2014, and conducted an investigation.<br><br>La Bounty 30(b)(6) Depo at 12:22-25 and 70:5-9, attached as Exhibit E to Chatowski Declaration. | 67. Undisputed. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| 68. La Bounty believes he notified his insurance agent, Andreini, about the loss very soon after the incident so they could report it to Praetorian.<br><br>La Bounty 30(b)(6) Depo at 70:10-22; 116:9-117:3, attached as Exhibit E to Chatowski Declaration. | 68. Undisputed. |
| 69. Michelle Boling ("Boling") of Andreini was involved in the handling of the cattle claims for Western Milling, and she reported the claim to Western Milling's insurer on August 14, 2014, the day she learned of the loss.<br><br>Boling Depo at 30:3-6 and 43:10-18, attached as Exhibit J to Chatowski Declaration. | 69. Undisputed. |
| 70. In August 2014 Boling was aware that the cattle belonging to Western Milling and the third parties died at GWR.<br><br>Boling Depo at 43:3-6, attached as Exhibit J to Chatowski Declaration. | 70. Undisputed. |
| 71. On the first day Boling learned of the claim she was aware that there was an issue whether the care, custody, or control exclusion might apply, and whether the products completed hazard | 71. Undisputed. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| might apply.<br><br>Boling Depo at 47:4-14, attached as Exhibit J to Chatowski Declaration. | |
| 72. As of September 9, 2014, Boling and La Bounty of Western Milling had generally discussed the products completed hazard definition and the care, custody, or control exclusion in the Policy. During that discussion La Bounty and Boling agreed to "Let this play out as the longer this goes it will be hard for them to assert any coverage issues."<br><br>Boling Depo at 82:21-83:1 and 83:6-87:5, attached as Exhibit J to Chatowski Declaration. | 72. Disputed. Boling and La Bounty did not know there were in fact coverage issues. Anything that was discussed was pure speculation<br><br>Undisputed that La Bounty and Boling agreed to "Let this play out as the long it goes it will be hard for them to assert any coverage issues".<br><br>Boling Depo at 83:6-87:5, attached as Exhibit J to Chatowski Declaration. |
| 73. Boling did not learn of the existence of C&K until the spring of 2015.<br><br>Boling Depo at 74:14-75:5, attached as Exhibit J to Chatowski Declaration. | 73. Undisputed. |
| 74. Jo Knapp ("Knapp") of National Claims Management ("NCM"), a third party administrator for Praetorian, was assigned to handle Western Milling's claim in August 2014, and continued to do so until December 2014. | 74. Undisputed. |

| | |
|---|---|
| Knapp Depo at 34:6-17, attached as Exhibit K to Chatowski Declaration. | |
| 75. Attorney Mike Kronlund ("Kronlund") was retained to assist Western Milling with respect to the cattle claims.<br><br>La Bounty 30(b)(6) Depo at 87:12-88:22, attached as Exhibit E to Chatowski Declaration. | 75. Disputed as phrased.<br><br>Kronlund was hired pre-litigation to defend Western Milling, and was paid by Praetorran. There was no formal retainer for Western Milling.<br>Knapp 60:16-61:20; 80:6-16; Kronlund 23:9 – 24:4<br><br>Kronlund did not do any coverage analysis because he was hired to defend the claims against Western Milling.<br>Kronlund 19:6-20:8 |
| 76. Knapp and Kronlund believed there were five or six different locations or different areas where cattle had been contaminated by grain that was at GWR.<br><br>Knapp Depo at 68:18-69:23, attached as Exhibit K to Chatowski Declaration. | 76. Disputed<br><br>On August 18, 2014, Michelle Boling told Jo Knapp that the cattle died at Goshen West Ranch.:<br><br>Boling Deposition, 56:17-59:1, 115:21- 117:5, attached as Exhibit 16 to Schuetze Declaration. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS




| | |
|---|---|
| | Praetorian's First Notice of Loss was Western Milling's submission of a General Liability Notice of Occurrence/Claim and a Property Loss Notice dated August 14, 2014. Praetorian was provided notice that the location of the Loss and Occurrence was at Goshen West Ranch, PREM #13, 31231 Road 60, Goshen, CA.<br><br>Knapp Deposition, 39:2-43:3, attached as Exhibit 6 to Schuetze Declaration.<br><br>General Liability Notice of Occurrence dated August 14, PRA 883-884, attached as Exhibit 7 to Schuetze Declaration.<br><br>Property Loss Notice dated August 14, 2014, PRA 887-888, attached as Exhibit 8 to Schuetze Declaration.<br><br>On August 19, 2014, Mark LaBounty sent to Mike Kronlund and Jo Knapp a draft release pertaining to customer Holman. This release stated in the second paragraph<br>WS WHEREAS, Holman owned 231 steers and heifers as of August 4, 2014 (the "Cattle") which were located at 31231 Road 60, Visalia, Califomia (the "Facility"). GWR delivered |




| | |
|---|---|
| | animal feed to be fed to Holman's Cattle at the Facility;<br><br>Kronlund Deposition, 31:10 – 34:4, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 150, attached as Exhibit 10 to Schuetze Declaration;<br><br>Knapp Deposition, 70:17 – 73:9, attached as Exhibit 6 to Schuetze Declaration;<br><br>Knapp Exhibit 135, attached as Exhibit 11 to Schuetze Declaration (at PRA 998 – 1001)<br><br>Both Kronlund and Knapp reviewed the release agreement. On August 19, 2014 Kronlund sent an e-mail to LaBounty stating "Mark, The release looks fine. You will have to at some point put a value on the animals that you purchased. How long until we know how those animals will do in the future."<br><br>Knapp Deposition, 72:25 – 73:9, attached as Exhibit 6 to Schuetze Declaration.<br><br>Kronlund Deposition, 34:5 – 35:11, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 151, attached as |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| | Exhibit 12 to Schuetze Declaration; (KRONLUND 112-114)<br><br>On August 20, 2014, LaBounty sent a draft release to Kronlund, with a cc to Jo Knapp regarding customer Lee Buttenshaw, which stated in the second paragraph<br><br>WHEREAS, Burtenshaw owned 823 heifers as of August 4, 2014 (1the "Cattle") which were located at 31231 Road 60, Visalia, California (the "Facility"). GWR delivered animal feed to be fed to Burtenshaw's Cattle al the Facility;<br><br>Kronlund Deposition, 37:10 – 38:10, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 152, attached as Exhibit 13 to Schuetze Declaration; (KRONLUND 98-104)<br><br>On September 16, 2014, Kronlund and Knapp received three more releases for settlement of claims. These releases contained the same form language in paragraph 2<br>WHEREAS, _________ owned ________ heifers as of August 4, |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| | 2014 (1the "Cattle") which were located at 31231 Road 60, Visalia, California (the "Facility"). GWR delivered animal feed to be fed to _____________'s Cattle al the Facility;<br><br>Knapp Deposition, 91:14-92-18, attached as Exhibit 6 to Schuetze Declaration<br><br>Kronlund Deposition 43:6-45:3, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 153, attached as Exhibit 17 to Schuetze Declaration; (KRONLUND 91-93)<br><br>Rule 30(b)(6) Deposition of Manny Avila (May 11, 2017) at pp. 28:21-29:3, attached as Exhibit 18 to Schuetze Declaration;.<br><br>Avila 30(b)(6) Exhibits 210-212, attached as Exhibit 19 to Schuetze Declaration. |
| 77. Initially Knapp did not identify any coverage issues, but her investigation was continuing.<br>Knapp Depo at 86:18-88:1, attached as Exhibit K to Chatowski Declaration. | 77. Undisputed that Knapp did not identify any coverage issues.<br><br>Disputed that Jo Knapp was conducting any investigation of coverage issues at |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| | that time. Knapp testified there was no basis to question coverage.<br><br>Knapp Depo at 86:18-88:20, attached as Exhibit K to Chatowski Declaration.<br><br>On August 28, 2014, Jo Knapp submitted a Large Loss Notice. The large loss notice states "We are working with defense counsel, the insured, the third party cattle owners, UC Davis labs, and the FDA to investigate liability and damages and mitigate further losses."<br>Knapp admitted she did not check the box for "coverage" on the Large Loss Notice" because there was "nothing at issue for coverage at that time" and there was no basis "to even question coverage at that time."<br><br>Knapp Deposition, 80:17 – 81:7, 84:21 – 88:20 attached as Exhibit 6 to Schuetze Declaration.<br><br>Knapp Exhibit 137, attached as Exhibit 15 to Schuetze Declaration (PRA 00010-00012)<br><br>As of August 28, 2014, no coverage issues had been identified by Knapp or |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| | communicated to anyone.<br><br>Knapp Deposition, 73:10-25, attached as Exhibit 6 to Schuetze Declaration.<br><br>On September 15, 2014, Jo Knapp told Michelle Boling that there were no coverage issues at that time.<br>Knapp Deposition, 89:20-91:10, attached as Exhibit 6 to Schuetze Declaration.<br><br>Boling Deposition, 94:7 – 95:5; 98:8 - 15, attached as Exhibit 16 to Schuetze Declaration. |
| 78. On November 10, 2014 Kronlund first learned from La Bounty that the cattle that were exposed to the contaminated feed were located at GWR, and not some other location owned by the cattle owners. Before that date Kronlund believed that the cattle were located at the owners' properties.<br><br>Kronlund Depo at 76:19-77:3 and 77:7-21, attached as Exhibit L to Chatowski Declaration. | 78. Disputed<br><br>On August 19, 2014, Mark LaBounty sent to Mike Kronlund and Jo Knapp a draft release pertaining to customer Holman. This release stated in the second paragraph<br>WS WHEREAS, Holman owned 231 steers and heifers as of August 4, 2014 (the "Cattle") which were located at 31231 Road 60, Visalia, Califomia (the "Facility"). GWR delivered animal feed to be fed to Holman's Cattle at the Facility;<br><br>Kronlund Deposition, 31:10 – 34:4, attached as Exhibit 9 to Schuetze |




| | |
|---|---|
| | Declaration.<br><br>Kronlund Exhibit 150, attached as Exhibit 10 to Schuetze Declaration;<br><br>Knapp Deposition, 70:17 – 73:9, attached as Exhibit 6 to Schuetze Declaration;<br><br>Knapp Exhibit 135, attached as Exhibit 11 to Schuetze Declaration (at PRA 998 – 1001)<br><br>Both Kronlund and Knapp reviewed the release agreement. On August 19, 2014 Kronlund sent an e-mail to LaBounty stating "Mark, The release looks fine. You will have to at some point put a value on the animals that you purchased. How long until we know how those animals will do in the future."<br><br>Knapp Deposition, 72:25 – 73:9, attached as Exhibit 6 to Schuetze Declaration.<br><br>Kronlund Deposition, 34:5 – 35:11, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 151, attached as Exhibit 12 to Schuetze Declaration; (KRONLUND 112-114)<br><br>On August 20, 2014, LaBounty sent a |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| | draft release to Kronlund, with a cc to Jo Knapp regarding customer Lee Buttenshaw, which stated in the second paragraph<br><br>WHEREAS, Burtenshaw owned 823 heifers as of August 4, 2014 (1the "Cattle") which were located at 31231 Road 60, Visalia, California (the "Facility"). GWR delivered animal feed to be fed to Burtenshaw's Cattle al the Facility;<br><br>Kronlund Deposition, 37:10 – 38:10, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 152, attached as Exhibit 13 to Schuetze Declaration; (KRONLUND 98-104)<br><br>On September 16, 2014, Kronlund and Knapp received three more releases for settlement of claims. These releases contained the same form language in paragraph 2<br><br>WHEREAS, _________ owned _______ heifers as of August 4, 2014 (1the "Cattle") which were located at 31231 Road 60, Visalia, California (the "Facility"). GWR delivered animal feed to be fed to |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS



| | |
|---|---|
| | _____________'s Cattle al the Facility;<br><br>Knapp Deposition, 91:14-92-18, attached as Exhibit 6 to Schuetze Declaration<br><br>Kronlund Deposition 43:6-45:3, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 153, attached as Exhibit 17 to Schuetze Declaration; (KRONLUND 91-93)<br><br>Rule 30(b)(6) Deposition of Manny Avila (May 11, 2017) at pp. 28:21-29:3, attached as Exhibit 18 to Schuetze Declaration;.<br><br>Avila 30(b)(6) Exhibits 210-212, attached as Exhibit 19 to Schuetze AVILA PMK,; 28:21-29:3 |
| 79. Based on Kronlund learning from La Bounty that the cattle that were exposed to the contaminated feed were located at GWR, Kronlund discussed this fact with Knapp on November 11, 2014, and the decision was made to issue a reservation of rights letter to Western Milling, and such a letter was issued on December 2, 2014. | 79. Disputed. Unsupported by the evidence as to when or how Kronlund learned about where the cattle were exposed to contaminated feed.<br><br>Disputed that Kronlund discussed with Knapp on November 11, 2014. Knapp testified that the reservation of rights letter was drafted before she received |

| | |
|---|---|
| Knapp Depo at 119:16-19, 121:6-16, 122:3-10, and 132:16-24, attached as Exhibit K to Chatowski Declaration. | the invoices, and she could not recall any phone call or e-mail regarding this fact. Knapp also inconsistently testified that it was her receipt of invoices that prompted the reservation of rights letter, although the reservation of rights letter was drafted prior to receiving the invoices.<br><br>Knapp Deposition at 116:15-122:19, attached as Exhibit 6 to Schuetze Declaration;<br><br>Undisputed reservation of rights letters issued on December 2, 2014. |
| 80. Knapp called Boling at Andreini on November 11, 2014 and told her she would be issuing a reservation of rights letter because she and Kronlund learned that GWR was a feed lot where cattle was being cared for, which was not her original understanding, and there needed to be further investigation concerning the care, custody, or control of the cattle.<br><br>Knapp Depo at 127:14-128:9, attached as Exhibit K to Chatowski Declaration. | 80. Undisputed as to what Knapp told Boling. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| 81. Knapp did not learn about the existence of C&K from Western Milling or Andreini when she was involved in the handling of the cattle claims.<br><br>Knapp Depo at 141:9-21, attached as Exhibit K to Chatowski Declaration. | 81. Misstates testimony and therefore disputed.<br><br>The cited testimony states that Knapp performed no analysis of C & K's role, and she was not aware of C & K.<br><br>Knapp Depo at 141:9-21, attached as Exhibit K to Chatowski Declaration. |
| 82. After the Rumensin poisoning incident, Western Milling settled the claims of eight third-party owners whose cattle were exposed.<br><br>Avila 30(b)(6) Depo at 19:5-9, attached as Exhibit I to Chatowski Declaration. | 82. Undisputed. |
| 83. The first two settlement agreements were entered into on August 18, 2014.<br><br>La Bounty 30(b)(6) Depo at 92:20-93:3, attached as Exhibit E to Chatowski Declaration. | 83. Disputed. The effective date is August 18,2014, but they were executed on a date after August 18, 2014 since drafts were being circulated to Knapp and Kronlund on August 19, 2014 and August 20, 2014.<br><br>On August 19, 2014, Mark LaBounty sent to Mike Kronlund and Jo Knapp a draft release pertaining to customer Holman. This release stated in the second paragraph<br>WS WHEREAS, Holman owned |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| | 231 steers and heifers as of August 4, 2014 (the "Cattle") which were located at 31231 Road 60, Visalia, Califomia (the "Facility"). GWR delivered animal feed to be fed to Holman's Cattle at the Facility;<br><br>Kronlund Deposition, 31:10 – 34:4, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 150, attached as Exhibit 10 to Schuetze Declaration;<br><br>Knapp Deposition, 70:17 – 73:9, attached as Exhibit 6 to Schuetze Declaration;<br><br>Knapp Exhibit 135, attached as Exhibit 11 to Schuetze Declaration (at PRA 998 – 1001)<br><br>Both Kronlund and Knapp reviewed the release agreement. On August 19, 2014 Kronlund sent an e-mail to LaBounty stating "Mark, The release looks fine. You will have to at some point put a value on the animals that you purchased. How long until we know how those animals will do in the future."<br><br>Knapp Deposition, 72:25 – 73:9, attached as Exhibit 6 to Schuetze Declaration. |

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

| | |
|---|---|
| | Kronlund Deposition, 34:5 – 35:11, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 151, attached as Exhibit 12 to Schuetze Declaration; (KRONLUND 112-114)<br><br>On August 20, 2014, LaBounty sent a draft release to Kronlund, with a cc to Jo Knapp regarding customer Lee Buttenshaw, which stated in the second paragraph<br><br>WHEREAS, Burtenshaw owned 823 heifers as of August 4, 2014 (1the "Cattle") which were located at 31231 Road 60, Visalia, California (the "Facility"). GWR delivered animal feed to be fed to Burtenshaw's Cattle al the Facility;<br><br>Kronlund Deposition, 37:10 – 38:10, attached as Exhibit 9 to Schuetze Declaration.<br><br>Kronlund Exhibit 152, attached as Exhibit 13 to Schuetze Declaration; (KRONLUND 98-104) |
| 84. Avila signed the first settlement agreement as the "GWR Feedlot | 84. Undisputed. |

| | |
|---|---|
| Manager" because he was the manager for the Goshen West Ranch Feedlot.<br><br>Avila 30(b)(6) Depo at 27:2-17, attached as Exhibit I to Chatowski Declaration. | |
| 85. Avila worked with the owners to determine the value for their cattle. In each case the cattle owners made a settlement demand to Western Milling and Western Milling accepted the demand without any negotiation. Whatever the client demanded, that's what Western Milling agreed to pay.<br><br>Avila Depo at 217:2-6 and 223:15-224:4, attached as Exhibit F to Chatowski Declaration. | 85. Disputed. There was a back-and-forth negotiation with the owners to determine the fair price of the cattle.<br><br>Avila Depo at 217:2-19, attached as Exhibit F to Chatowski Declaration. |

**RESPONSE TO PLAINTIFF'S CONCLUSION OF LAW.**

1. Undisputed that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

2. There are triable issues of material fact that Praetorian had a duty to indemnify Western Milling, breaching the implied covenant of good faith and fair dealing, and punitive damages. Praetorian's second conclusion of law is therefore disputed based on the facts presented in response to the material facts presented by Praetorian, the additional disputed facts presented by Western Milling, and for the reasons set forth in Western Milling's points and authorities.

a. Since Praetorian sought to defend the claims without promptly reserving its rights, even at the prelitigation stage, California law establishes that



SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

Praetorian is estopped from later asserting a defense of non-coverage as to Western Milling. *Miller v. Elite Ins. Co.,* 100 Cal.App.3d 739, 755, 161 Cal.Rptr. 322 (Cal.Ct.App. 1980); *Dewitt v. Monterey Ins. Co.,* 204 Cal.App.4th 233, 245-246, 204 Cal.Rptr. 705 (Cal.Ct.App. 2012).

b. Western Milling detrimentally relied on Praetorian's conduct. *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 34, 44 Cal.Rptr.2d 370 (Cal. 1995); *Chase v. Blue Cross,* 42 Cal.App.4th 1142, 1157, 50 Cal.Rptr.2d 178 ("An insurer is estopped from asserting a right, even though it did not intend to mislead, as long as the insured reasonably relied to its detriment upon the insurer's action.")

c. The Separation of Insured provision in the CGL policy requires that except for the limits of the insurance, that it apply " separately to each insured against whom claim is made or 'suit' is brought." The California Supreme Court has held that such a separation of insured clause means "the words of the clause can reasonably be read to mean that the per occurrence indemnity ceiling was the sole exception to the general rule that all provisions of the policies – i.e. [t]his insurance' – would apply to each insured as if he or she were the only insured." *Minkler v. Safeco Ins. Co. of Am.,* 49 Cal.4th 315, 323, 110 Cal.Rptr.3d 612 (Cal. 2010.)

d. The care, custody and control exclusion applies separately to C&K since its employees were providing the care, and had custody and control over the cattle. *Lambert Well Serv., Inc. v. Wellington Ins. Co.*. 344 Mont. 204, 207, 186 P.3d 1255 (Mont. 2008)(oil well under insured's "care, custody, and control" when tubing was damaged by the insured's employees acting within the scope of their employment]; *Cashmere Pioneer Growers, Inc. v. Unigard Sec. Ins. Co.,* 77 Wash.App. 436, 439, 891 P.2d 732 (Wash.Ct.App. 1995) (exclusion applied to apple loss occurring when apples were in insured employee's care, custody, and control.")

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS

e. Although Goshen West Ranch is owned by Western Milling, premises ownership does not establish that Western Milling had care, custody, or control over the affected cattle at the time of the incident given C&K's actual care, custody, and control. (*See Cincinnati Ins. Co. v. Cham's Jewelry Art, Inc.*, 31 F.App'x 793, 795 (3d Cir. 2002)(insured who organized gemstone exhibition did not have care, custody, and control over stolen gemstones in the possession of individual dealers at time of a theft); *River Servs. Co. v. Hartford Acc. & Indem Co.*, 449 F.Supp. 622, 626 (N.D. Ohio 1977)(exclusion did not apply to damage to non-owned trucks being loaded and unloaded at insured's facility.)

f. Praetorian has not demonstrated that Western Milling had exclusive care, custody, and control. "Where the 'care, custody, or control' is not exclusive, this exclusion does not apply." *Legacy Partners, Inc. v. Clarendon Am. Ins. Co.*, 2010 WL 1495198, at *8 (S.D.Cal. 2010); *see Kershaw v. Maryland Cas. Co.,* 172 Cal.App.2d 248, 256, 342 P.2d 72 (Cal.Ct.App. 1959) (exclusion does not apply to materials damaged after being set aside by insured for transport by other parties.) Partial control does not qualify as 'exclusive' control required by case law for the CCC exclusion to apply. *Home Indem. Co. v. Leo L. Davis, Inc.,* 79 Cal.App.3d 863, 145 Cal.Rptr. 158 (Cal.Ct.App.1978)/

g. Praetorian breached the implied covenant of good faith and fair dealing by failing to promptly, thoroughly, and fairly investigate Western Milling's claim, and to promptly and diligently process and evaluate the claim so as not to unreasonably withhold or delay payment of benefits owed. (*Wilson v. 21st Century Insurance Company* , 42 Cal.4th 713, 68 Cal.Rptr.3d 746 (Cal. 2007) ; *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691 (Cal. 1979).

h. Praetorian acted with malice, oppression or fraud toward its insured Western Milling pursuant to California Civil Code, section 3294. "[A]n insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind." (*Dalrymple v. United Services*





SHERNOFF BIDART ECHEVERRIA LLP LAWYERS FOR INSURANCE POLICYHOLDERS

*Auto. Assn.* 40 Cal.App.4th 497, 511, 46 Cal.Rptr.2d 845 (Cal.Ct.App. 1995); accord *Neal,* 21 Cal.3d at 921-922 [affirming finding of bad faith based on insurer's "conduct and motives"].) An award of punitive damages can also use as its predicate the unreasonable or bad faith interpretation of the insurance policy. (*Mason v. Mercury Cas. Co.* 64 Cal.App.3d 471, 475, 134 Cal.Rptr. 545 (Cal.Ct.App. 1976).)

Dated: August 1, 2017

SHERNOFF BIDART ECHEVERRIA LLP

By: ______________________________
RICARDO ECHEVERRIA
STEVEN SCHUETZE
STEVEN MESSNER
Defendant and Counter-Complainant,
WESTERN MILLING, LLC

SHERNOFF BIDART ECHEVERRIA LLP
LAWYERS FOR INSURANCE POLICYHOLDERS
sbe

Re: *Praetorian v. Western Milling, LLC, et al.*
Case No.: 1:15-CV-00557-DAD-EPG

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2017, I electronically filed the foregoing document entitled **WESTERN MILLING LLC'S RESPONSE IN OPPOSITION TO STATEMENT OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW OFFERED TO SUPPORT PRAETORIAN'S MOTION FOR SUMMARY JUDGMENT** with the United States District Court for the Eastern District. Notice will be automatically e-mailed to the following individuals registered with the Court's CM/ECF System:

Gary R. Selvin, Esq. / Nancy J. Strout, Esq. / John A. Chatowski, Esq.
Selvin Wraith Halman LLP
505 14th Street, Suite 1200
Oakland, California 94612
Telephone: (510) 874-1811 / Facsimile: (510) 465-8976
gselvin@selvinwraith.com / nstrout@selvinwraith.com / jchatowski@selvinwraith.com
Attorneys for Plaintiff, Praetorian Insurance Company

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **August 1, 2017,** at Claremont, California.

/s/ Debbie Hunter
Debbie Hunter