UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRAETORIAN INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> WESTERN MILLING, LLC, <br><br> Defendant. | No. 1:15-cv-00557-DAD-EPG <br><br> <u>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT</u> <br><br> (Doc. No. 56) |
| WESTERN MILLING, LLC, <br><br> Counter-claimant, <br><br> v. <br><br> PRAETORIAN INSURANCE CO., <br><br> Counter-defendant. | |

This action stems from a dispute over the coverage provided by an insurance contract for damages allegedly suffered as a result of contaminated feed manufactured by defendant and counter-claimant Western Milling, which was fed to cattle and caused extensive mortality and morbidity. Plaintiff and counter-defendant Praetorian filed a motion for summary judgment on July 7, 2017. (Doc. No. 56.) Western Milling filed an opposition to that motion on August 1, 2017, and Praetorian filed a reply on August 8, 2017. (Doc. Nos. 60, 62.) On September 6, 2017,
/////

1

the court held a hearing on the motion, at which attorneys Gary Selvin and John Chatowski[1] appeared on behalf of plaintiff and attorney Ricardo Echeverria appeared on behalf of defendant. At that time, the court took the matter under submission. For the reasons that follow, the motion for summary judgment will be denied in part and granted in part.

## BACKGROUND

Most of the facts here are undisputed. Western Milling manufactures and sells feed for different kinds of livestock, including feed used by commercial dairies. (Doc. No. 60-1 at 2.) Western Milling is the sole member of another limited liability company—C&K LLC—which was formed in April 2008 but was inactive until November 2009. (*Id.* at 2–3.) C&K manages Goshen West Ranch, a feedlot owned by Western Milling. (Doc. No. 62-2 at 6.) All profits and losses of C&K are allocated to Western Milling, and C&K does not itself own any property, cattle, or equipment. (Doc. No. 60-1 at 3.) Western Milling purchased Goshen West Ranch in November 2009. (*Id.* at 9.) The ranch is located at 31231 Road 60, Visalia, California. (*Id.* at 8–9.) All of the buildings, structures, and equipment at Goshen West Ranch are owned by Western Milling. (*Id.* at 9.) While there are no written contracts between Western Milling and C&K, there is an oral agreement that C&K's employees will manage and care for the cattle housed at the ranch. (*Id.* at 9–10, 13; Doc. No. 62-2 at 7.) Some of the cattle belong to Western Milling, while other cattle belong to third parties who contract with Western Milling for the caretaking of their cattle. (Doc. No. 60-1 at 14–15.) Western Milling provides the feed used on the ranch, and directs the proportions of different products—silage, hay, grain, and nutrients—to be included in the feed ultimately given to the cattle. (*Id.* at 17–19.)

On August 5, 2014, the cattle at Goshen West Ranch were given feed that was contaminated with high levels of monensin/Rumensin,[2] causing 861 cattle deaths, as well as numerous injuries to the reproductive capacities of other cattle which did not die. (Doc. No. 60-1 at 26–27; Doc. No. 62-2 at 9.) This feed was sent directly from Western Milling's mill to Goshen

---

[1] Plaintiff's counsel appeared telephonically.

[2] Rumensin is a brand name for monensin, which is an antibiotic commonly used in raising beef cattle and chickens.

2

West Ranch. (Doc. No. 60-1 at 26.) Defendant submitted a notice of the loss to plaintiff on August 14, 2014, at which time Jo Knapp, a vice president of third-party claims adjustor National Claims Management used by plaintiff Praetorian, was assigned to adjust the claim. (Doc. No. 62-2 at 9–10.) Knapp reviewed the policy within a few days of receiving the claim. (*Id.* at 10.) Attorney Mike Kronlund was then retained by Knapp to assist Western Milling in handling the claims brought against it.[3] (*Id.* at 10.) Attorney Kronlund and Knapp then worked with Mark LaBounty, the general counsel of Western Milling, on settlement agreements with several customers of Western Milling whose cattle were either killed or injured by the contaminated feed, including reviewing two draft releases on August 19 and August 20, 2014. (Doc. No. 62-2 at 11–13.) Neither Knapp nor any other agent of Praetorian's indicated to Western Milling that there was an issue with insurance coverage as of August 28, 2014. (*Id.* at 14.) Indeed, attorney Kronlund and Knapp were sent three more settlement releases for review on September 16, 2014, and one more on October 9, 2014, each involving losses suffered as a result of the contaminated feed. (*Id.*) No issues related to insurance coverage were raised, and Knapp even communicated to Michele Boling—the insurance broker who procured the policy from Praetorian for Western Milling—on September 15, 2014, indicating that there were no coverage issues. (Doc. No. 62-2 at 14.) It appears claims were settled with six different customers during this period.

The first time insurance coverage issues were raised by Praetorian was on November 11, 2014, when Knapp communicated to Boling that the insurer would be issuing a reservation of rights letter, because it believed the claims were excluded under the care, custody, or control exclusion of the policy. (Doc. No. 56-16 at 13–14.) Knapp claimed to have only recently learned that the cattle in question were located at Goshen West Ranch, and not at different customer

/////

---

[3] The parties claim to dispute precisely why attorney Kronlund was hired: Western Milling asserts Kronlund was hired to "defend Western Milling," while Praetorian asserts he was "hired to deal with the defense of potential claims" that could come from the August 2014 incident, as well as to ensure that all evidence was preserved. (Doc. No. 62-2 at 10–11.) The importance of this distinction is not apparent, and it is in any event clear attorney Kronlund was hired to work with Western Milling on resolving any claims against it for damaged or deceased cattle as a result of the feed.

3

locations.[4] (*See* Doc. No. 56-16 at 6.) The reservation of rights letter was issued on December 2, 2014. (Doc. No. 62-2 at 16–17.) This lawsuit was filed by Praetorian on April 10, 2015, seeking a declaratory judgment as to whether coverage existed for the losses incurred by Western Milling. (Doc. No. 1.) Defendant Western Milling counterclaimed on December 7, 2015, seeking damages for breach of contract and violation of the implied covenant of good faith and fair dealing as well as declaratory relief concerning certain issues under the insurance contract. (Doc. No. 18.) Following discovery, plaintiff Praetorian moved for summary judgment on its claim for declaratory relief concerning the extent of coverage, and on Western Milling's counterclaim for breach of the implied covenant of good faith and fair dealing and punitive damages, on July 7, 2017.[5] (Doc. No. 56.) Western Milling has not moved for summary judgment in its favor on any claim.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party

---

[4] Western Milling disputes this account, and comes forward with evidence that both Knapp and attorney Kronlund were provided with draft settlement releases shortly after the incident indicating the cattle died at 31231 Road 60, Visalia, California, the address of Goshen West Ranch. (*See* Doc. No. 60-5 at 104.) Further, Michele Boling, the insurance broker who obtained the policy for Western Milling from Praetorian, testified at deposition that she advised Knapp the cattle were located at Goshen West Ranch on Monday, August 18, 2014. (Doc. No. 60-5 at 174–75.)

[5] Praetorian also moved for summary judgment on Western Milling's third, fourth, and fifth causes of action which, respectively, alleged a derivative claim for violations of California Business and Professions Code § 17200 *et seq.* and sought declaratory relief on the issues of the right to independent counsel and the application of the care, custody, or control exclusion. (Doc. No. 56-1 at 29.) Counsel for Western Milling advised the court at oral argument on the pending motion that it does not oppose dismissal of these causes of action. Therefore, the court will grant summary judgment in favor of Praetorian on the third, fourth, and fifth causes of action of Western Milling's counterclaim.

4

may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is

the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## ANALYSIS

### A. Coverage

Plaintiff Praetorian moves for summary judgment on its claim for declaratory relief that there is no coverage, and therefore no duty to defend or indemnify Western Milling. (Doc. No. 56-1 at 17–27.) Praetorian maintains the losses suffered here are not covered by the insurance contract between the parties because they fall within an exception to that coverage, namely one exempting "property damage" to "personal property in the 'care, custody or control' of an[6] insured." (Doc. No. 56-1 at 8, 17–27.) Defendant Western Milling maintains the coverage exclusion does not bar recovery here because the cattle were actually in the care, custody, or control of C&K, not Western Milling, and the contract contains a "separation of insureds" provision. (Doc. No. 60 at 20–24.)

The parties do not dispute the contract contains an exclusion which excludes coverage for property damage to "[p]ersonal property in the care, custody or control of the insured." (Doc. No. 60-1 at 4.) In California, exclusionary clauses in insurance contracts are strictly construed against the insurer and in favor of the insured. *E.M.M.I. Inc. v. Zurich Am. Ins. Co.*, 32 Cal. 4th 465, 471 (2004). "Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer." *Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115 (1971). The insurer bears the burden of proof to demonstrate a claim falls within a policy's exclusionary provisions. *N. Am.*

---

[6] The policy actually excludes coverage for damage to personal property in the care, custody or control of "the" insured, a distinction of some significance discussed below.

*Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 642 (2006) (citations omitted). "[S]trict construction does not mean strained construction; under the guise of strict construction, [a court] may not rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid." *Nat'l Union Fire Ins. Co. v. Lynette C.*, 228 Cal. App. 3d 1073, 1077 (1991). Where the terms of an insurance policy are not defined, the court is "to look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18–19 (1995).

Care, custody, or control clauses are intended "to except from policy coverage liability on account of damage to property held under bailment." *Karpe v. Great Am. Indem. Co.*, 190 Cal. App. 2d 226, 230 (1961). California courts have held that "constructive or proprietary control is all that [care, custody or control] exclusion[s] and the law contemplate." *Silva & Hill Constr. Co. v. Emp'rs Mut. Liab. Ins. Co.*, 19 Cal. App. 3d 914, 924–25 (1971). That said, "care, custody or control" exclusions are "inapplicable where the control exercised by the insured . . . is not *exclusive and complete* at the critical moment in question." *Home Indem. Co. v. Leo L. Davis, Inc.*, 79 Cal. App. 3d 863, 872 (1978) (emphasis added); *Legacy Partners, Inc. v. Clarendon Am. Ins. Co.*, No. 08CV920 BTM (CAB), 2010 WL 1495198, at *8 (S.D. Cal. Apr. 14, 2010) ("[W]here the 'care, custody or control' is not exclusive, this exclusion does not apply."); *Emp'rs Ins. of Wausau v. Cal. Water Serv. Co.*, No. C-06-03002 RMW, 2008 WL 3916096, at *14 (N.D. Cal. Aug. 25, 2008) (rejecting application of this exclusion where the property at issue was not in the exclusive control of insured). Other courts agree an insured's control over the property at issue must be exclusive for the exclusion to apply. *See Stewart Warner Corp. v. Burns Int'l Sec. Servs., Inc.*, 527 F.2d 1025, 1029 (7th Cir. 1975) (noting "the insured's possessory control must be exclusive at the relevant time" for exclusion to apply); *Essex Ins. Co. v. Soy City Sock Co.*, 503 F. Supp. 2d 1068, 1075 (C.D. Ill. 2007) (observing Illinois law requires "the control exercised by the insured [to] be exclusive" for exclusion to apply); *Mid-Continent Cas. Co. v. Advantage Med. Elecs., LLC*, 196 So. 3d 238, 246 (Ala. 2015) (exclusion requires exclusive possessory control of
/////

property to apply); *Eisenbarth v. Hartford Fire Ins. Co.*, 840 P.2d 945, 950 (Wyo. 1992) (absent explicit language to the contrary, exclusion requires "total (not shared) care, custody or control").

Moreover, where there are multiple insureds under the same policy, as here, courts in California interpret exclusions differently when the policy excludes coverage based on the actions of "an insured" or "any insured," as compared to the actions of "the insured." *See Century-National Ins. Co. v. Garcia*, 51 Cal. 4th 564, 568–69 (2011) ("[U]nlike policy exclusions that refer to 'an' insured or 'any' insured, exclusions based on acts of 'the' insured are construed as not barring coverage for innocent coinsureds."); *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 318 (2010) (explaining that the acts of "an" or "any" insured apply to all insureds collectively, while the acts of "the" insured apply solely to that insured); *Fire Ins. Exch. v. Altieri*, 235 Cal. App. 3d 1352, 1360–61 (1991); *Cal. State Auto. Ass'n Inter-Ins. Bureau v. Warwick*, 17 Cal. 3d 190, 194–95 (1976).

Additionally, the parties here do not dispute the contract contains a "separation of insureds" provision, providing that the policy applies "[a]s if each Named Insured were the only Named Insured" and "[s]eparately to each insured against whom claim is made or 'suit' is brought." (Doc. No. 62-2 at 3.) "The intent of a separation of insureds provision, also referred to as a severability clause, is to 'provide each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy.'" *Energy Ins. Mut. Ltd. v. Ace Am. Ins. Co.*, 14 Cal. App. 5th 281, 304 (2017) (quoting *Safeco Ins. Co. v. Robert S.*, 26 Cal. 4th 758, 772 (2001)). Thus, even in a policy excluding coverage based on the acts of "an" insured, which would generally apply collectively, the introduction of a severability or separation of insureds provision "creates an ambiguity which must be construed in favor of coverage that a lay policyholder would reasonably expect." *Minkler*, 49 Cal. 4th at 319. Specifically, a lay person would understand a policy with a separation of insureds provision to mean that "each insured's coverage would be analyzed separately," even where the exclusion would normally treat the insureds collectively. *Id.*

Plaintiff maintains Western Milling had control of the cattle for three main reasons: (1) because the cattle were held at the Goshen West Ranch via contracts Western Milling entered into

with third parties; (2) because Goshen West Ranch was owned by Western Milling, and thus the cattle at issue were held on its property; and (3) because Western Milling exercised control over the animals' feed and care regimen. (Doc. No. 56-1 at 18–19.) Plaintiff also asserts that C&K and Western Milling should be considered collectively or jointly for purposes of the "care, custody or control" exclusion. (*Id.* at 24–26.) Defendant argues that, under the "separation of insureds" provision, only the actions of each insured can be attributed to that insured. (Doc. No. 60 at 20–21.) Therefore, while the policy insured both Western Milling and C&K, only the actions of each entity acting separately can be considered in deciding the extent of coverage, and the cattle were (at least partly) in the care, custody, and control of C&K, not Western Milling. (*Id.* at 21–24.)

It is clear that, under this contract, the actions of each insured must be analyzed separately. The parties do not dispute that C&K and Western Milling are separate entities and are listed as separate insureds on the policy. (Doc. No. 62-2 at 2) (noting eighteen separate entities listed on the policy). Moreover, the California Supreme Court has clearly held any exclusions in a policy which are based on the actions of "the" insured look only to the actions of the particular insured seeking recovery, and do not bar recovery based on the actions of other insureds. *Century-National Ins. Co.*, 51 Cal. 4th at 568–59; *Minkler*, 49 Cal. 4th at 319. Here, the exclusion Praetorian argues applies so as to prevent coverage in this case is one which excludes coverage for property damage to "[p]ersonal property in the care, custody or control of *the* insured." (Doc. No. 60-1 at 4 (emphasis added); Doc. No. 56-8 at 22.) Thus, California law requires that each insured's actions in caring for the property, or exercising care, custody, or control of it, must be considered separately, not collectively in this case.[7]

---

[7] To the extent plaintiff asserts the "separation of insureds" provision is inapplicable here, it is partly correct. (Doc. No. 56-1 at 24–26.) It is not by operation of the "separation of insureds" provision that the policy requires evaluating each insured's actions separately; rather, it is the function of the exclusionary language itself, which employs the phrase "the" insured. *See Century-National Ins. Co.*, 51 Cal. 4th at 568–59; *Minkler*, 49 Cal. 4th at 319. However, the court notes that *even if* the exclusionary language applied to "an" or "any" insured and would therefore typically refer collectively to the insureds, California law provides that the presence of the "separation of insureds" provision creates an ambiguity requiring the court to interpret the exclusion as pertaining to the actions of the insureds separately. *Minkler*, 49 Cal. 4th at 319.

Analyzing each insured's actions separately, plaintiff Praetorian is not entitled to summary judgment, since it cannot establish as a matter of law that the cattle were under Western Milling's "*exclusive and complete* [care, custody or control] at the critical moment in question." *Leo L. Davis, Inc.*, 79 Cal. App. 3d at 872 (emphasis added). There is evidence before the court on summary judgment that could support a finding that Western Milling had some level of care, custody, or control of Goshen West Ranch, and therefore, the cattle housed there. It is undisputed, for instance, that Western Milling owns Goshen West Ranch, along with all buildings, structures, and equipment thereon. (Doc. No. 60-1 at 9.) Manny Avila is an employee of Western Milling who supervises the ranch and is a liaison between Western Milling and the C&K employees that manage the cattle. (*Id.* at 13.) Avila makes site visits to the ranch, and sometimes gives instructions to the workers to increase the feed given to the cattle. (*Id.* at 14.) Avila also replaces the equipment on Goshen West Ranch, procures the customers and negotiates contracts for the cattle housed at the ranch, and invoices the cattle's owners. (*Id.* at 14–16.) Moreover, Bob Berczynski of Western Milling is the nutritionist for Goshen West Ranch. (*Id.* at 17.) Berczynski provides mixing instructions to the workers at Goshen West Ranch concerning the specific quantities of different products to be put into the feed rations. (*Id.* at 18.) Berczynski sometimes visits Goshen West Ranch to check the cattle and their condition, and decides how the feed rations should be combined for different cattle. (*Id.* at 20–21.) Berczynski then e-mails the mixing instructions to employees at Goshen West Ranch, who input the information into a computer program at the ranch. (*Id.* at 20–21.) The employees of C&K do not decide on their own how to mix the feed. (*Id.* at 21–22.) Human resources employees from Western Milling conduct safety meetings at the ranch every three months. (*Id.* at 24.) Evidence establishing these facts suggests Western Milling exercises *some* control over Goshen West Ranch.

At the same time, however, there is also evidence before the court suggesting that Western Milling at least shared care, custody, and control of the cattle with C&K, and did not have exclusive control of the ranch. In this regard, the evidence on summary judgment establishes that

/////

/////

C&K is a separate entity from Western Milling,[8] and is a limited liability company with articles of incorporation and an operating agreement. (Doc. No. 62-2 at 6.) It has its own Employer Identification Number, files federal returns for employment withholding and state income tax returns. (*Id.*) C&K and Western Milling had an oral agreement that C&K would manage the employees at Goshen West Ranch and would pay those employees to take care of the cattle. (*Id.* at 7.) C&K processes the cattle in and out of Goshen West Ranch and feeds the cattle at the ranch. (*Id.* at 7–8.) Western Milling pays C&K to oversee the cattle and manage Goshen West Ranch. (*Id.* at 8.) Joe Mendes Sr. manages Goshen West Ranch, and while he was previously paid as an independent contractor by Western Milling, he is now an employee of C&K.[9] (Doc. No. 60-1 at 10–12.) Joey Mendes, the son of Joe Mendes, also works at Goshen West Ranch and

---

[8] The court disagrees with Praetorian's assertion that "both C&K and Western Milling constitute 'the insured'" under the policy. (Doc. No. 56-1 at 24.) The California Supreme Court's jurisprudence on insurance exclusions suggests otherwise. *See Century-National Ins. Co.*, 51 Cal. 4th at 568–69; *Minkler*, 49 Cal. 4th at 318. Additionally, Praetorian argues that "C&K is ostensibly Western Milling for purposes of the operation" of Goshen West Ranch, because it is a wholly owned subsidiary, allocates profits and losses to C&K, does not own the property, cattle, or equipment itself, and for myriad other reasons. (Doc. No. 56-1 at 20–22.) However, it is clear that LLCs are separate and distinct entities from their members. *CB Richard Ellis, Inc. v. Terra Nostra Consultants*, 230 Cal. App. 4th 405, 411 (2014); *PacLink Comms. Int'l, Inc. v. Superior Court*, 90 Cal. App. 4th 958, 963 (2001) (noting that an LLC "has a legal existence separate from its members") (quoting 9 Witkin Summary of Cal. Law (2001 supp.) Corporations, § 4A, p. 346); *cf. Kwok v. Transnation Title Ins. Co.*, 170 Cal. App. 1562, 1570–71 (2009) (transfer of real property from LLC to its two members severed a title insurance contract in part because the LLC was a separate legal entity). Praetorian does not argue Western Milling is the "alter ego" of C&K or that its separate legal form should be disregarded for purposes of this insurance contract, and provides no authority that either proposition should apply here. *See* Cal. Corp. Code § 17703.04(b) (noting that common law rules governing alter ego liability apply to LLCs and their members); *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300 (1985) (noting that piercing the corporate veil generally requires showing (1) "that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," and (2) that inequity results from continuing to apply corporate personhood) (quoting *Automotriz Del Golfo De Cal. v. Resnick*, 47 Cal. 2d 792, 796 (1957)). Thus, settled principles of California law with respect to insurance and business entities appear inconsistent with Praetorian's interpretation of the contract here.

[9] The parties also dispute whether Joe Mendes has the right to and/or does make personnel decisions at Goshen West Ranch on his own, and whether Avila supervised Joe Mendes. (Doc. No. 60-1 at 12; Doc. No. 62-2 at 8.) This alone is a disputed issue of material fact which would preclude summary judgment.

is employed by C&K. (*Id.* at 10–11; Doc. No. 62-2 at 8–9.) Thus, there is significant evidence before the court on summary judgment that C&K shared in the care, custody, or control of the cattle and, thus, that Western Milling's custody of them was not "complete and exclusive." *Leo L. Davis, Inc.*, 79 Cal. App. 3d at 872.

On summary judgment, the court must draw all reasonable inferences from the evidence in favor of the non-moving party, which here is defendant Western Milling. *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) ("[W]hat is required to defeat summary judgment is simply evidence 'such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor.'"); *Walls*, 653 F.3d at 966; *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002). Doing so here, the court concludes that a reasonable factfinder could conclude Western Milling did not exercise complete and exclusive care, custody, or control of the cattle at issue, because much of the caretaking was done by C&K, which is a separate legal entity with its own employees. *See Leo L. Davis, Inc.*, 79 Cal. App. 3d at 872; *see also Healy Tibbitts Const. Co. v. Ins. Co. of N. Am.*, 679 F.2d 803, 804 (9th Cir. 1982) (upholding trial court finding that plaintiff had control of property at issue and access was more than just temporary); *Legacy Partners, Inc.*, 2010 WL 1495198, at *8 ("[W]here the 'care, custody or control' is not exclusive, this exclusion does not apply.").

Accordingly, plaintiff Praetorian's motion for summary judgment with respect to the issue of insurance coverage will be denied.[10]

/////

/////

---

[10] Because plaintiff is not entitled to summary judgment in its favor on the issue of coverage and defendant has not moved for summary judgment in its favor on the issue of estoppel, the court need not reach the question of whether plaintiff is estopped from denying coverage here. As counsel for Western Milling acknowledged at the hearing on the pending motion, estoppel is generally a question of fact, and only becomes a question of law "where the facts are undisputed and only one reasonable conclusion can be drawn from them." *Feduniak v. Cal. Coastal Comm'n*, 148 Cal. App. 4th 1346, 1360 (2007); *see also Golden Gate Water Ski Club v. Cty. of Contra Costa*, 165 Cal. App. 4th 249, 257 (2008). Both the relevant facts concerning estoppel and the reasonable conclusions to be drawn from those facts in relation to such a claim are disputed here, providing a further reason to deny summary judgment in this case.

12

**B.     Good Faith and Fair Dealing**

Praetorian also argues that, apart from the issue of coverage, its denial of the insurance claim was reasonable as a matter of law because there was a genuine issue as to the insurer's liability, and it is therefore entitled to summary judgment in its favor on Western Milling's claim for breach of the implied covenant of good faith and fair dealing. (Doc. No. 56-1 at 28.) Western Milling counters that triable issues of fact remain with respect to this claim, because a reasonable jury could conclude plaintiff acted unreasonably when it belatedly denied coverage of the claim and failed to investigate C&K's role in the care, custody, and control of the affected cattle. (Doc. No. 60 at 24–27.)

California has a well-established cause of action sounding in tort, rather than contract, against an insurer who breaches the implied covenant of good faith and fair dealing with its insured, when it "unreasonably and in bad faith withholds payment of the claim of its insured." *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683–85 (1988) (quoting *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 575 (1973)). To establish a bad faith claim, "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). For an insurer to fulfill its obligations, it "must give at least as much consideration to the latter's interests as it does to its own." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818–19 (1979). "While an insurance company has no obligation under the implied covenant of good faith and fair dealing to pay every claim its insured makes, the insurer cannot deny the claim 'without fully investigating the grounds for its denial.'" *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 720–21 (2007) (quoting *Frommoethelydo v. Fire Ins. Exch.*, 42 Cal. 3d 208, 215 (1986)). This requires the insurer to "fully inquire" into the possible bases supporting the insured's claim before denying it." *Id.* at 721. Further, "denial of a claim on a basis unfounded in the facts known to the insurer, or contradicted by those facts, may be deemed unreasonable." *Id.*

Breaches of the implied covenant of good faith and fair dealing in the insurance context are subject to the genuine dispute rule. This rule holds that where there is a genuine dispute as to the insurer's liability, the insurer "is not liable in bad faith even though it might be liable for

13

breach of contract." *Id.* at 723. However, a party is only entitled to summary judgment in its favor under the genuine dispute rule "where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." *Id.* at 724. "[T]he reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of subsequent events that may provide evidence of the insurer's errors." *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1073 (2007).

Here, the undisputed facts, when construed in Western Milling's favor, suggest that there were two separate entities—one which owned Goshen West Ranch and supplied its cattle with feed, and one which managed and cared for those cattle. While the two entities shared costs and profits from the ranch, they had different employees with different responsibilities. Moreover, under Western Milling's version of the facts discussed above, Praetorian and its agents knew the roles Western Milling and C&K played in operating Goshen West Ranch, knew they were separate entities, knew that the losses of cattle occurred at the ranch, and in no way advised Western Milling that the losses at issue might not be covered until after Western Milling had already begun settling the claims against it. Additionally, on summary judgment Western Milling has presented testimony from Knapp suggesting that she did not do any work on the claim between August 28, 2014 and November 11, 2014. (Doc. No. 60-5 at 76) (indicating work was "being done on the file throughout the period under Mr. Kronlund's direction . . . and I was being updated"). Nor did Knapp's supervisor, Jack Deacon, review the file during September or October 2014, while Western Milling was settling these claims under the direction of the attorney Praetorian had secured for them. (Doc. No. 62-2 at 15–16.) Further, Praetorian and its agents did no investigation concerning C&K prior to issuing its reservation of rights letter in December 2014. (*Id.* at 17.) A delay in investigating or a failure to sufficiently investigate a claim of coverage can be a basis for finding the implied covenant of good faith and fair dealing was breached. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 1000 (9th Cir. 2001) (under California law, "if an insurer fails to properly investigate its insured's claim, it is subject to liability for breach of the implied covenant of good faith and fair dealing"); *Harbison v. Am. Motorists Ins.*

*Co.*, 636 F. Supp. 2d 1030, 1041 (E.D. Cal. 2009) ("Among the most critical factors bearing on the insurer's good faith is the adequacy of its investigation of the claim.") (quoting *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 879–80 (2000)).

In light of the evidence set forth above and assuming a breach of the insurance contract was found, a reasonable factfinder could also conclude that plaintiff acted in bad faith when it belatedly denied the claims, despite knowledge of the nature of the loss, the control of the ranch, and the relationship between Western Milling and C&K. *See Wilson*, 42 Cal. 4th at 724; *Harbison*, 636 F. Supp. 2d at 1039 ("[The] reasonableness of an insurer's claim-handling conduct is ordinarily a question of fact.") (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1009–10 (9th Cir. 2004)).

Accordingly, plaintiff Praetorian's motion for summary judgment in its favor as to Western Milling's claim for breach of the implied covenant of good faith and fair dealing will also be denied.

### C. Punitive Damages

Praetorian also moves for summary judgment in its favor on Western Milling's claim for punitive damages. (Doc. No. 56-1 at 29–30.) Western Milling argues punitive damages are typically available in bad faith insurance claims and that triable issues of fact remain precluding the granting of summary judgment. (Doc. No. 56-1 at 27–29.) In California, punitive damages are available where the claimant proves by clear and convincing evidence that the other party "has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Malice is defined by statute to include "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). Oppression "means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c)(2). California courts have generally construed this language to mean "intent to injure or willful and conscious disregard of others' rights." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000).

/////

Punitive damages may be sought in a bad faith action against an insurer. *See Egan*, 24 Cal. 3d at 820 ("The special relationship between the insurer and the insured illustrates the public policy considerations that may support exemplary damages in cases such as this."); *Jordan*, 148 Cal. App. 4th at 1073; *Fleming v. Safeco Ins. Co.*, 160 Cal. App. 3d 31, 44 (1984). That said, the standards for bad faith insurance claims and punitive damages are not the same under California law. *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 318 (1999); *Griffin Dewatering Corp. v. N. Ins. Co. of N.Y.*, 176 Cal. App. 4th 172, 194–95 (2009); *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 328 (1992) ("Evidence that an insurer has violated its duty of good faith and fair dealing does not thereby establish that it has acted with the requisite malice, oppression or fraud to justify an award of punitive damages."); *Fleming*, 160 Cal. App. 3d at 44 ("[W]e hasten to point out that bad faith does not necessarily indicate the presence of malice, oppression, or fraud.").

Because of this difference, California courts have held punitive damages are generally only available against insurance companies when there are "established policies or practices in claims handling which are harmful to insureds." *Mock*, 4 Cal. App. 4th at 329; *see also Hangarter*, 373 F.3d at 1013–14 (noting punitive damages are available against insurance companies where there is sufficient evidence of a "conscious course of conduct, firmly grounded in established company policy") (quoting *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 923 (1978)); *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1165 (9th Cir. 2002) (same); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1287 (1994) ("It is notable that punitive damages have been assessed against insurance companies most commonly where a showing has been made of a continuous policy of nonpayment of claims."); *Patrick v. Md. Cas. Co.*, 217 Cal. App. 3d 1566, 1576 (1990) (holding "a consistent and unremedied pattern of egregious insurer practices might rise to the level of a malicious disregard of the insured's rights," but the "inept and negligent handling of a claim" does not); *Downey Sav. & Loan Ass'n v. Ohio Cas. Ins. Co.*, 189 Cal. App. 3d 1072, 1098–99 (1987); *Moore v. Am. United Life Ins. Co.*, 150 Cal. App. 3d 610, 637 (1984). The Ninth Circuit has also observed "California cases upholding punitive damages typically do so in cases involving small plaintiffs, usually ones that are in

distress of one form or another." *Slottow v. Am. Cas. Co. of Reading, Pa.*, 10 F.3d 1355, 1361–62 (9th Cir. 1993); *but see Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985) (allowing punitive damages to stand where in-house counsel at insurer was advised by other employees that the insured was "probably entitled to defense," yet counsel refused to investigate or defend).

Here, Western Milling in large part relies on the same facts and evidence which support its bad faith claim in attempting to establish a triable issue of fact with respect to its punitive damages claim. In particular, Western Milling points to Praetorian's failure to conduct a "prompt and thorough claims investigation," to advise Western Milling of coverage issues prior to settling claims, and to properly analyze its own policy provisions, as well as various alleged misrepresentations it made concerning its understanding of the location of the cattle. (Doc. No. 60 at 28–29.) Western Milling has not presented sufficient evidence to withstand summary judgment on the issue of punitive damages. No evidence is before the court showing a policy or pattern of Praetorian disregarding the rights of its insured. *See Mock*, 4 Cal. App. 4th at 329; *Tomaselli*, 25 Cal. App. 4th at 1287; *Patrick*, 217 Cal. App. 3d at 1576. Nor is there any evidence before the court on summary judgment suggesting that Western Milling is a "small plaintiff" or in any significant form of distress, financial or otherwise, due to Praetorian's failure to provide coverage. *Slottow*, 10 F.3d at 1361–62. Rather, these are two rather large entities engaged in arms-length business transactions with the assistance of counsel. Moreover, the only evidence Western Milling has put forward to support a punitive damages claim is the very same evidence upon which it relies with respect to its claim of breach of the implied covenant of good faith and fair dealing, which admittedly relies on a different standard. *See PPG Indus., Inc.*, 20 Cal. 4th at 318; *Mock*, 4 Cal. App. 4th at 328.

Most importantly, the court concludes that Western Milling has presented insufficient evidence on summary judgment from which a reasonable jury could decide that Praetorian acted with an "intent to injure or [a] willful and conscious disregard" of Western Milling's rights. *Cruz*, 83 Cal. App. 4th at 167. Even assuming Praetorian is found by a jury to have acted in bad faith in denying coverage, the evidence presented could not lead a reasonable juror to also

17

conclude that Praetorian acted with "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). Rather, viewed in light most favorable to plaintiff the evidence on summary judgment would only support a finding that Praetorian was negligent, possibly even reckless, in failing to recognize from the start that insurance coverage might not extend to the claimed loss because of the "care, custody, or control" exclusion. Upon recognizing this, it might have been unreasonable for Praetorian to elect not to pay Western Milling, which had already started settling claims. However, the unreasonable denial of insurance benefits allows a *bad faith* claim to proceed, not a claim for punitive damages. *See PPG Indus., Inc.*, 20 Cal. 4th at 318; *Griffin Dewatering Corp.*, 176 Cal. App. 4th at 194–95; *Mock*, 4 Cal. App. 4th at 328. Western Milling's presentation of the evidence here suggest Praetorian should have realized it had a potential claim that there was no insurance coverage due to the exclusion at an earlier date, before Western Milling started settling claims. (*See, e.g.*, Doc. No. 60 at 7–9) (arguing Praetorian unreasonably failed to discover the claimed basis for exclusion until after it had unconditionally provided Western Milling with a defense to claims brought against it). This theory—that Praetorian should have brought up the coverage issues earlier, if at all—belies any reasonable conclusion that Praetorian was aware of or consciously acted to disregard Western Milling's rights. It is simply a bridge too far to say that Praetorian's acts, while potentially self-interested and arguably lacking diligence, were malicious, intentional, or evidenced a willful and conscious disregard of Western Milling's rights.

Accordingly, plaintiff Praetorian's motion for summary judgment in its favor as to Western Milling's claim for punitive damages will be granted.

**CONCLUSION**

For all of the reasons set forth above, plaintiff Praetorian's motion for summary judgment (Doc. No. 56) is denied in part and granted in part. The motion is denied as to Praetorian's claim for declaratory relief on the issue of coverage. Praetorian's motion for summary judgment with respect to Western Milling's breach of the implied covenant of good faith and fair dealing claim is also denied. Praetorian's motion for summary judgment is granted as to Western Milling's

/////

/////

18

claims for punitive damages, and with respect to the third, fourth, and fifth causes of action of Western Milling's counterclaim.

IT IS SO ORDERED.

Dated: **September 27, 2017**

UNITED STATES DISTRICT JUDGE