UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRAETORIAN INSURANCE CO.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WESTERN MILLING, LLC,<br><br>　　　　Defendant. | No. 1:15-cv-00557-DAD-EPG<br><br><u>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u><br><br>(Doc. Nos. 81, 82) |
| WESTERN MILLING, LLC,<br><br>　　　　Counter-claimant,<br><br>　　v.<br><br>PRAETORIAN INSURANCE CO.,<br><br>　　　　Counter-defendant. | |

On September 27, 2017, this court issued an order granting in part and denying in part plaintiff and counter-defendant Praetorian Insurance Co.'s motion for summary judgment. (Doc. No. 73.) Thereafter, the parties requested that the court vacate the scheduled final pretrial conference and trial dates and authorize the filing of cross motions for partial summary judgment. (Doc. No. 78.) A telephonic status conference was held on October 10, 2017, at which time the court granted the parties' request. (Doc. No. 80.) Plaintiff Praetorian and defendant and counter-

1

claimant Western Milling, LLC filed their motions for partial summary judgment on October 23, 2017, their oppositions on November 6, 2017, and their replies on November 13, 2017. (Doc. Nos. 81–86.) On December 5, 2017, the court held a hearing on the motions at which attorneys John Chatowski and Gary Selvin appeared on behalf of plaintiff and attorney Steven Schuetze appeared on behalf of defendant. For the reasons set forth below, the court will grant plaintiff's motion and deny defendant's.

**BACKGROUND**

The factual background of this case was largely set out in the court's prior order addressing Praetorian's initial summary judgment motion and need not be repeated here. (*See* Doc. No. 73 at 2–4.) The issue presented by the parties in their pending motions for partial summary judgment specifically concerns the effect of the court's prior ruling on a secondary insurance policy issued by Praetorian to Western Milling (hereinafter, the "excess policy"). This excess policy—Policy Number BPU-100106-04—"provides coverages in the amount of $5 million in excess coverage above the limits of the primary policy." (Doc. No. 83-5 at ¶ 19.) The primary policy was initially issued to Western Milling, but C&K was added as an additional named insured to the primary policy in 2009. (Doc. No. 81-2 at ¶¶ 4–7) (noting that "Western Milling, LLC," "C&K Ag Holdings, LLC," and "Goshen West Ranch, dba" are all listed as separate insureds under the primary policy). The excess policy generally extends coverage provided by the primary policy, once the primary policy's limits have been reached. (*Id.* at ¶¶ 11, 13.) Both C&K and Western Milling are named as insureds under the excess policy. (*Id.* at ¶ 10.)

Three provisions of the policies—two from the excess policy and one from the primary policy—are relevant to resolution of the pending motions. The first of these is from the excess policy and incorporates most of the primary policy into that excess policy (hereafter the "incorporation clause"). The incorporation clause states:

> The definitions, terms, conditions, limitations, exclusions, and warranties of the first 'Underlying Insurance' policy . . . apply to this coverage unless they are inconsistent with the provisions of this policy . . . .

2

(*Id.* at ¶ 11.)

The second provision, also from the excess policy, is a "care, custody, or control" exclusion. While similar to the exclusion described in the primary policy, which was addressed in the court's prior order, the exclusion in the excess policy is more expansive and excludes losses to "personal property in the care, custody or control of *any* insured."[1] (*See* Doc. No. 81-2 at ¶ 12) (emphasis added).

Finally, the primary policy contains a severability, or separation of insureds provision (hereafter the "severability provision"), which is also relevant to the disposition of the pending motions. This provision states, in pertinent part:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and
>
> b. Separately to each insured against whom claim is made or "suit" is brought.

(Doc. No. 81-2 at ¶ 8.)

In addressing Praetorian's initial summary judgment motion, this court determined that, under the primary policy, each insured's actions must be evaluated independently under the "care, custody, or control" exclusion, which barred losses of "personal property in the care, custody or control of *the* insured." (*See* Doc. No. 73 at 6–9.) The court also noted that, even if the exclusion was phrased differently and barred losses of personal property in the care, custody, or control of "an" insured, the severability provision that was contained in the primary policy would have rendered the exclusion ambiguous under California law, again "requiring the court to interpret the exclusion as pertaining to the actions of the insureds separately." (*Id.* at 9 n.7.) In the cross motions for summary judgment now pending before the court, the parties dispute whether that severability provision is incorporated into the excess policy and, if so, whether it renders the care,

---

[1] As noted in the prior order, the primary insurance policy contains a "care, custody, or control" exclusion which excludes losses to "personal property in the care, custody or control of *the* insured." (Doc. No. 73 at 6) (emphasis added). The difference between the phrases "an" or "any" insured and "the" insured is one that carries legal significance. (*See id.* at 6–12.)

3

custody, or control exclusion of the excess policy ambiguous.

**LEGAL STANDARD**

The legal standards applicable to motions for summary judgment were set out in the court's prior order in this case and will not be repeated in their entirety here. (See Doc. No. 73 at 4–6.) In short, summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

Here, the parties have stipulated to a set of undisputed facts for purposes of the pending cross motions for partial summary judgment. (Doc. No. 81–2.)[2] Therefore, the sole issue before the court is a question of law, appropriate for resolution by way of summary judgment.

**ANALYSIS**

It is undisputed that the "care, custody, or control" exclusion in the excess policy states that losses to personal property in the care, custody, or control of "any" insured are excluded from coverage. This contrasts with the exclusion in the primary policy, which barred coverage for property in the care, custody, or control of "the" insured. Since it is also undisputed that the

---

[2] Defendant Western Milling has also submitted its own statement of undisputed facts, which plaintiff Praetorian in fact disputes, at least in part. (*See* Doc. Nos. 82-3, 83-5.) It appears this separate statement of facts by Western Milling is largely undisputed as to the underlying facts. Praetorian's objections are merely to the phrasing and significance to be attributed to certain facts. (*See* Doc. No. 83-5.) Nevertheless, given the nature and posture of these motions, the court will confine itself to the undisputed facts presented by the parties in ruling on the pending motions.

4

damaged cattle were within the care, custody, or control of Western Milling and C&K—both named insureds and therefore subsumed within the phrase "any insured"—the excess policy, standing on its own, would exclude the losses at issue from coverage. (*See* Doc. No. 73 at 6–9.) Western Milling contends, however, that the excess policy incorporates another provision of the primary policy: the severability provision. (*See* Doc. No. 81-2 at ¶ 11.) If the severability provision is incorporated into the excess policy, Western Milling argues, it creates an ambiguity with the excess policy's care, custody, or control exclusion which must be resolved against Praetorian as the insurer.

The incorporation clause of the excess policy states that all provisions of the primary policy are incorporated into the excess policy "unless they are *inconsistent* with the provisions of this policy." (Doc. No. 81-2 at ¶ 11 (emphasis added).)[3] Western Milling argues that a provision of the primary policy is only inconsistent if it is in direct conflict with another term found in the excess policy: for instance, the excess policy requires notification of a claim "promptly in writing," whereas the primary policy requires notification of a claim "as soon as practicable." (Doc. No. 82 at 11.)

In resolving the question of law posed by the parties in light of the language of these two policies, the court is guided by the following principles. Courts are to "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995); *Fireman's Fund Ins. v. Superior Court*, 65 Cal. App. 4th 1205, 1212 (1997). The court's goal in interpreting a contract is to give effect to the objective meaning of the parties' agreement at the time they entered it. *See* Cal. Civ. Code § 1636 ("A contract must be so interpreted as to give effect to the mutual intention

---

[3] These clauses appear to be common in excess policies that seek to extend coverage provided under a primary policy, commonly known as "following form" policies. *See Haering v. Topa Ins. Co.*, 244 Cal. App. 4th 725, 734 (2016) ("A following form excess policy generally will contain the same basic provisions as the underlying policy, with the exception of those provisions that are inconsistent with the excess policy."). "Any inconsistency or conflict between the provisions of a following form excess policy and the provisions of an underlying primary policy is resolved by applying the provisions of the excess policy." *Id.* The language in the policies before this court are properly subject to this same interpretation.

5

of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."); *Thor Seafood Corp. v. Supply Mgmt. Stores*, 352 F. Supp. 2d 1128, 1131 (C.D. Cal. 2005) ("When a court is required to interpret a contract, the goal should be to discern and enforce the parties' mutual intent at the time the contract was formed.").

Following form excess insurance policies, such as this one, have been interpreted by courts in California and the Ninth Circuit by looking to whether the provision in the primary policy which is to be incorporated is facially inconsistent with another term found in the excess policy. *Federated Rural Elec. Ins. Corp. v. Certain Underwriters at Lloyds*, 293 Fed. App'x 539, 541 (9th Cir. 2008)[4] (finding there was no conflict between the excess and primary policies where the excess policy was "simply less specific," because it failed to define the term "earth movement"); *Oakley, Inc. v. Exec. Risk Spec. Ins. Co.*, No. SACV 10-01585-CJC (FFMx), 2011 WL 13137931, at *2–3 (C.D. Cal. Feb. 24, 2011) (concluding that an arbitration clause in the primary policy was inconsistent with a provision specifically allowing the insured to bring suit against the excess insurer); *Haering*, 244 Cal. App. 4th at 736 (noting that a provision in a primary policy which supplied first party uninsured motorist protection was inconsistent with an excess policy covering only third party liability claims); *see also Home Ins. Co. v. Am. Home Prods. Corp.*, 902 F.2d 1111, 1113–14 (2d Cir. 1990) (holding the terms of a primary policy which provided for supplementary payments conflicted with the excess policy which contained single coverage provision that excluded supplementary payments).

Here, the provision to be incorporated into the excess policy—the severability provision of the primary policy—is facially inconsistent with the excess policy's "care, custody, or control" exclusion. The severability provision of the primary policy states that the policy applies "[a]s if each Named Insured were the only Named Insured." (Doc. No. 81-2 at ¶ 8.) The "care, custody, or control" exclusion in the excess policy excludes coverage for losses to "[p]ersonal property in the care, custody or control of *any* insured." (*Id.* at ¶ 12 (emphasis added).) The severability provision of the primary policy therefore purports to treat each insured's coverage separately,

---

[4] This opinion is appropriately cited pursuant to Ninth Circuit Rule 36-3.

6

while the exclusion of the excess policy applies collectively regardless of which insured is claiming the loss and which insured had control of the property at issue. The inconsistency is apparent on the face of the primary and excess policies. Indeed, this very same inconsistency has previously been highlighted by the California Supreme Court. *See Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 319, 324–25 (2010). As that court noted in *Minkler*, "even if a provision excluding coverage for injury arising from the specified acts of 'an' insured would normally mean that the excludable conduct of one insured bars coverage for all, a policy provision stating that '[t]his insurance applies separately to each insured' reasonably implies a contrary result." *Id.* at 332 (emphasis omitted). The California Supreme Court has held that when two provisions such as these are included in the same policy, it creates a facial inconsistency. *Minkler*, 49 Cal. 4th at 319, 324–25, 332. Thus, the court concluded that when the provisions were in the same policy, the inconsistency rendered them both ambiguous, and that ambiguity was required to be interpreted in favor of the insured. *Id.* Here, however, the inconsistency is between the terms in two different policies. Since the excess policy incorporates only those provisions of the primary policy which are not inconsistent with the provisions of the excess policy, this inconsistency prevents the severability provision of the primary policy from being incorporated into the excess policy.

Since the severability provision of the primary policy is not incorporated into the excess policy, there is no ambiguity created by its interplay with the "care, custody, or control" exclusion in the excess policy. The exclusion set forth in the excess policy applies in full force. The parties do not dispute that both Western Milling and C&K are named as insureds under the excess policy. (Doc. No. 81-2 at ¶ 10.) Nor do the parties dispute that the cattle at issue were within the "care, custody, or control" of Western Milling and C&K, in some combination. (*See* Doc. No. 81-2 at ¶¶ 14–16, 23–29) (delineating responsibilities for the care of cattle at Goshen West Ranch between Western Milling and C&K). Since the cattle in question were within the care, custody, or control of Western Milling and C&K, coverage for these losses is excluded under the excess policy.

/////

**CONCLUSION**

For the reasons given above, the court grants Praetorian's motion for partial summary judgment (Doc. No. 81) and denies Western Milling's motion for partial summary judgment (Doc. No. 82). Additionally, this court previously vacated all future scheduled dates pending resolution of these motions for summary judgment. (Doc. No. 80.) As these motions are now resolved, the parties are directed to submit a joint status report within **fourteen (14) days** of service of this order addressing proposed dates for the final pretrial conference and trial of this action, as well as any other matters relevant to the disposition of this case.

IT IS SO ORDERED.

Dated: **February 2, 2018**

UNITED STATES DISTRICT JUDGE